# Wytheville.

SCOTT COUNTY SCHOOL BOARD V. MARY AVA CARTER, ELIZABETH CARTER, CLAIMANT.

June 18, 1931.

Present, Prentis, C. J., and Campbell, Holt, Hudgins and Browning, JJ.

The opinion states the case.

*S. H. Bond,* for the appellant.

*W. S. Cox,* for the appellee.

BROWNING, J., delivered the opinion of the court.

Appellant is here complaining of an award made by the Industrial Commission. The case involves a single question of law which is this: Do the facts found by the Commission show that the accident resulting in the death of Miss Ava Carter grew out of her employment?

The Commission certifies these facts: ·

*"Findings of Fact.*—A preponderance of the evidence in this case shows that Miss Ava Carter was fatally injured on May 2, 1929, death ensuing on the same date, by reason of a cyclone demolishing the building in which she was a teacher, in Rye Cove, Scott county, Virginia; that her average weekly wage was the sum of $18.75. All salient facts were admitted by counsel representing the parties in interest, save the extent of the dependency of Mrs. Elizabeth Carter, mother of the deceased, and whether the accidental death of the claimant's de-

ceased resulted from an injury arising out of and in the course of the employment.

"The mother and daughter lived on a farm, comprising about seventy-five acres. It was shown that the deceased contributed on an average $50.00 per month to the support of her mother and self in providing food and clothing for her and hiring a girl to do certain work and to stay with her. The record does not show that sufficient crops were raised on, or other income received from, the farm to justify taking those facts into consideration. The mother was in poor health and unable to do much work. The record establishes, beyond contradiction, that the mother was, in fact, a dependent of the deceased. It could not be definitely ascertained to what extent the mother was dependent other than that the daughter expended the sum of $50.00 per month for the benefit of herself and mother. According to the record, the latter owned the home and farm, from which they realized nothing further than an abode, pasture for a cow and space for growing a few chickens. From the record, taking all facts into consideration, it is evident that the mother was not a total dependent, because the home and lands were of some value in reducing the cash outlay required for sustenance. Under the conditions, there is little doubt that the sum of $50.00 per month was a reasonable sum to be expended in cash by the daughter in the maintenance of the home in their standard of living. Under the circumstances, this Commission feels that a finding of partial dependency to the extent of sixty-six and two-thirds per cent is an equitable estimate.

"The evidence as to the accident arising out of and in the course of employment shows that the schoolhouse was located on an eminence on a plateau, at a point where the wind blew more continually than at other points, and so located as to be exposed to, and more susceptible to, the hazard of storms. Ordinarily these happenings are referred to as 'acts of God' and are not compensable. However, where it is shown that the

risks of employment are augmented by reason of the location of the building on an eminence, which exposes it to storms, then it is compensable. In view of the liberal interpretation to be placed on the workmen's compensation act, so that its manifest purposes be accomplished, the claimant has preponderated in evidence to such an extent that a finding of fact that the accident arose out of and in the course of employment is more compatible with the evidence, and it is so made.

"An award covering partial dependency to Mrs. Elizabeth Carter, at the rate of $6.25 per week for 300 weeks, will issue, payable every two weeks, beginning May 2, 1929. All arrears of compensation shall be paid on receipt of this award, together with burial expenses and medical attention as provided by the act.

"An attorney fee of $175.00 shall be deducted from the foregoing award and paid to W. S. Cox, attorney at law, Gate City, Virginia, for services rendered the claimant in the prosecution of her claim.

"The defendants will pay costs of this proceeding."

■ Under the provisions of the Virginia statute on workmen's compensation, this court is bound by the finding of facts by the Industrial Commission and section 1887 (2) (d), which reads as follows: " 'Injury' and 'personal injury' shall mean only injury by accident arising out of and in the course of the employment and shall not include a disease in any form, except where it results naturally and unavoidably from the accident."

■ As the young woman who was killed was, at the time, one of the teachers employed by the district or county and was engaged in the performance of her duties, in the school building, where it was her duty to be, the meaning and significance of the phrase "in the course of the employment," is satisfied.

This being so, we are concerned with the single question of law, viz: Did the injury arise out of such employment?

In answer to this question the Commission saith: "The evidence as to the accident arising out of and in the course of

employment shows that the schoolhouse was located on an eminence on a plateau, at a point where the wind blew more continually than at other points, and so located as to be exposed to, and more susceptible to, the hazard of storms. Ordinarily, these happenings are referred to as 'acts of God' and are not compensable. However, where it is shown that the risks of employment are augmented by reason of location of the building on an eminence, which exposes it to storms, then it is compensable. In view of the liberal interpretation to be placed on the workmen's compensation act, so that its manifest purposes be accomplished, the claimant has preponderated in evidence to such an extent that a finding of fact that the accident arose out of and in the course of employment is more compatible with the evidence, and it is so made."

In Ruling Case Law, volume 28, page 713, under paragraph 2, entitled "Purposes Sought to Be Accomplished," treating the subject of workmen's compensation acts, it is said: "The intention of the act, then, is to secure workmen and their dependents against becoming objects of charity, by making reasonable compensation for all such calamities as are incidental to the employment." And in the same work, at page 793, part of section 85, under the general heading: "Tendency of Courts to Favor or Disfavor Award of Compensation," we find the following: "Where it appears that death resulted to the employee, and that the proceeding is instituted in behalf of needy dependents, all courts are apt to permit an award to stand," and numerous cases are sighted in note fourteen to sustain this portion of the text.

The text-writers upon this subject are quite in accord that the tendency of the courts to construe workmen's compensation acts with great liberality in favor of the injured person is growing.

In the same work, at page 798, section 90, under the general heading: "Weight Attaching to Dicta and Decided Cases," we find the following: "And Lord Parmoor says that 'there is lit-

tle use in referring to previous cases.' * * * and it is observed by Lord Parmoor, that 'there is a tendency to overload the words of the statute by refinements based on case law.' In the same case Lord Wrenbury says: 'No recent act has provoked a larger amount of litigation than the workmen's compensation act. The few and seemingly simple words "arising out of and in the course of the employment" have been the fruitful (or fruitless) source of a mass of decisions turning upon nice distinctions and supported by refinements so subtle as to leave the mind of the reader in a maze of confusion.' "

In the same work, at page 806, section 94, is this: "If the employment brings with it no greater exposure to injurious results from natural causes, and neither contributes to produce these nor to aggravate their effect, as from lightning, or severe heat or cold, than those to which persons generally in that locality, whether so employed or not, are equally exposed, there is no causal connection between the employment and the injury. But where 'the employment brings a greater exposure and injury results,' the injury does arise out of the employment. Accordingly, compensation has been allowed for injuries from sunstroke and frostbite. Injuries from lightning have also been held to be the proper subject of an award of compensation, but to reach this conclusion in any ordinary case the court must look with great favor upon the claim of the workman." It is, however, pointed out that a majority of the courts view such an occurrence as an accident and that no responsibility exists for injuries resulting therefrom.

It seems to us that the intention of the statute itself, as defined by text-writers and as declared by the courts, may be said to be strongly in favor of the person injured.

We have in the immediate case the declaration of the learned Commissioner, Nickels, chairman, in the finding of fact that the school building in which Miss Ava Carter was when she was killed by a cyclone demolishing the building; that it was located on an eminence, which was on a plateau and at a point

where the wind blew more continually than at other points, and that it was so located as to be exposed to and more susceptible to the hazard of storms. These are declared facts to which we must give credence. These being the conditions which obtained at the time, we are bound to say that the employment subjected the unfortunate young woman to greater exposure than were those persons generally in that locality.

We quote from some of the cases which we think are pertinent and confirming authority for sustaining the finding of the Commission.

In the case of *Reid, et al.* v. *Automatic Electric Washer Co., Inc.*, 189 Iowa 964, 179 N. W. 323, 324, it was held that "a fatal injury to a factory foreman crushed when the walls of the building collapsed on account of a high wind as he was attempting to close windows, a part of his duty, to have arisen out of and in the course of his employment, and not to have been caused by an act of God."

The court, in the last mentioned case, says: "The wind is, doubtless, as many other things are, according to the law books, an act of God, but here human agencies participated. For instance, the defendants made it the duty of deceased, and gave him directions to be at this particular and more hazardous place, to put down windows, when the alarm was given for the storm as it approached, when the men were to be dismissed. Deceased was not struck by the wind itself, as a bolt of lightning might strike him, but the falling wall, which was built by human agency, and not strong enough to withstand the wind— lack of diligence in giving the alarm, perhaps—and other things shown in the record. There is no question of negligence in this case. The circumstances are referred to, to show that deceased was not injured solely by the act of God, but to show that there was some causal relation between the injury and the employment, a part of his employment being to close the windows, or, as said in *Pace* v. *Appanoose County*, 184 Iowa 498, 168 N. W. 916: 'A causal connection between the conditions under

which the work is required to be performed and the resulting injury.'

"And as said in the case of *Griffith* v. *Cole Bros.*, 183 Iowa 415, 165 N. W. 577, L. R. A. 1918-F, 923: 'The accident arose because of something I (deceased) was doing in the course of my employment, and because I was exposed by the nature of my employment (putting down the windows as the storm approached after the alarm was sounded) to some particular danger (the falling wall at that place).' "

In *Fogarty* v. *Biscuit Co.*, 221 N. Y. 20, 116 N. E. 346, 347, the court said: "Where * * * an employee is injured while performing an act which is fairly incidental to the prosecution of a business and appropriate in carrying it forward and providing for its needs, he and his dependents are not to be barred from recovery because such act is not a step wholly embraced in the precise and characteristic process or operation which has been made the basis of the group in which employment is claimed."

In *Thom* v. *Sinclair* [1917], A. C. 127, Ann. Cas. 1917-D, 188, it was held "where a person working in a shed is injured by the fall thereon of a wall on the adjacent premises not belonging to the employer, the accident is one arising out of and in the course of the employment within the workmen's compensation act."

This last case is one of a number wherein the British court of last resort, that is, the House of Lords, has to some extent clarified the meaning of the phrase "arising out of and in the course of the employment" as used to limit the accidents falling within the scope of the workmen's compensation act.

Viscount Haldane, in this case, in discussing the meaning of the words "arising out of the employment," says:

"My lords, there are no doubt many kinds of accident which do not in any sense arise out of the employment. There may be no reason why such accidents should happen to a man in one situation rather than to a man in another, and it may,

therefore, be impossible to pronounce truly that they are so connected with the employment as to have arisen out of it. But where a man is ordered to work under a particular roof and that roof falls in on him, it is not clear that the accident belongs to that category. If the particular accident would not have happened to him had he not been employed to work under the particular roof, there seems to be nothing in the language of the act which precludes an occurrence from being held within it which satisfied the test proposed by the first of the alternative constructions modified to the extent I have suggested. The falling of the particular roof could only happen in one place, and the presence there of the person injured was due to the employment."

And, continuing, the court says: "If, therefore, the language of the act in question were to be construed upon principle and apart from authorities I should be prepared to hold that it was satisfied where, as here, it has been established as a fact that it was as arising out of her employment that the appellant was under the roof by the falling in of which she was injured. Behind the fact that the roof fell we cannot go. The limiting words in the act do not refer to any act of negligence on the part of the employers, as to be looked for, but simply to a restriction of the loss of accident against which he is to provide insurance. The appellant was injured because she happened at the moment of the accident to be working in the shed where she was employed to work, and I think that, unless authority constrains us to hold the contrary, the act ought to be construed as signifying that an accident such as this comes within the class against which she is insured. Whether the remote cause of the roof falling was the collapse of a neighboring wall, or the falling down of some high adjacent building, or a stroke of lightning, seems to me immaterial in the light of this construction."

As we have said before, the finding of facts of the Commission establishes the verity that the school building was

on a plateau which was on an eminence, where the wind blew more continually than at other points, and so located as to be exposed to and more susceptible to the hazard of storms. In view of this and the fact that the statute should be construed liberally in favor of the complainant and the further fact that its intention is to secure employees and their dependents against becoming objects of charity, we are constrained to affirm the order and judgment of the Commission.

*Affirmed.*

CAMPBELL and HOLT, JJ., dissenting.