COURT OF APEALS OF VIRGINIA


Present:   Judges Elder, Frank and Humphreys
Argued at Richmond, Virginia


VIRGINIA EMPLOYMENT COMMISSION/
 COMMONWEALTH OF VIRGINIA
                                                            OPINION BY
v.       Record No. 1823-03-3                   JUDGE ROBERT P. FRANK
                                                            JUNE 29, 2004
RHONDA HALE


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          Scott John Fitzgerald, Assistant Attorney General (Jerry W. Kilgore,
          Attorney General; Judith Williams Jagdmann, Deputy Attorney
          General; Edward M. Macon, Senior Assistant Attorney General, on
          brief), for appellant.

          Rhonda L. Overstreet (Lumsden, Overstreet & Hansen, on brief), for
          appellee.


          The Virginia Employment Commission/Commonwealth of Virginia (employer) appeals a

decision of the Workers' Compensation Commission awarding disability compensation and

medical benefits to Rhonda Hale (claimant).  On appeal, employer contends the commission

erroneously concluded claimant's injury, which resulted from a lightning strike, arose out of the

peculiar conditions of her employment.  We find no credible evidence in the record to support

the commission's finding, and, therefore, we reverse and dismiss.

                                        BACKGROUND

          Claimant worked for employer as an interviewer.  That position required claimant to

perform a variety of different tasks including the operation of the office's switchboard.  On

May 2, 2002, claimant and a co-worker, Barbara Reynolds, were assigned to work at the

switchboard. This duty was "a normal and necessary part of [their] job[s]," and they did not have the option of refusing switchboard duty.

When claimant returned from lunch, a "big storm was brewing." "[I]t got real dark outside" and was "[t]hunder[ing]" and "light[]ning." Reynolds initially "was sitting in the main switchboard seat," but she did not feel comfortable there, so claimant "took that position." Reynolds moved to a second telephone within a few feet of claimant. Both women were "trouble shooting claims or answering questions from claimants." They continued to answer the phones during the storm because they "had not been instructed not to answer the phone."

While claimant was on the telephone with a caller and had her hand on the computer keyboard, she heard "a real loud noise in the telephone" and saw "a big blue . . . transparent streak" of light "c[o]me right down beside [her] work station." Claimant thought "[i]t looked like light[]ning." Claimant screamed or uttered some sort of exclamation. She thought she "actually lost the call," and her computer "flicker[ed]."

Claimant felt she had been shocked by the lightning. Her extremities began to tingle, and her speech became garbled. She immediately reported the incident to Reynolds, who confirmed that she, too, saw a streak of light and heard a loud noise. Claimant described her symptoms to Reynolds, including "a tingling in her hands and arms, sort of like [she] had been electrocuted." Reynolds observed that claimant "was like shaking or nervous or tense." Reynolds then asked the assistant office manager "if [they] could not answer the phones and he said that [they] had to." Claimant continued to answer the telephone, but said she "hung up on quite a few people because [her] speech was garbled."

About thirty minutes after the lightning strike, claimant became nauseous and began having chest pains. She told her immediate supervisor that they had "what . . . appeared to be light[]ning come in," and she described her symptoms.

The lightning did not damage either claimant's or Reynolds's telephone or computer. No damage was done to the building's roof, ceiling tiles, carpet, or furniture.

Claimant worked through the end of her shift and then sought treatment at the hospital emergency room, where she was admitted as a precautionary measure. Emergency room notes indicate claimant told the staff that she "was working at her job on a computer and talking on the telephone, when she saw a blue streak of light[]ning hit her computer." Later, claimant visited a sleep clinic and described to the personnel:

> an incident at her work suggesting that light[]ning had struck and come through the phone or computer line and affected the [claimant]. . . . She was not actually struck directly by the light[]ning but said that it came through her equipment. She saw a blue streak of light[]ning behind a partition where she works. She was very close to the blue streak of light[]ning she saw.[1]

Claimant was diagnosed with "[e]lectrical shock secondary to light[]ning." She was later diagnosed with post-traumatic stress disorder. Her primary care physician found she was temporarily and totally disabled, but was able to return to work on August 20, 2002.

Employer denied claimant's request for workers' compensation benefits, and claimant requested a hearing. After taking testimony, the deputy commissioner awarded benefits. He found claimant's evidence was credible and concluded, "claimant, because of her duties as an interviewer, was exposed to the causative hazard involved to a degree greater than others in the community." He noted, "claimant's duties [at employer's switchboard] were mandatory rather than discretionary, and, because [claimant] was assisting a customer over the telephone during a thunderstorm, [she] was as a result of her employment exposed to a danger which someone not

---

[1] At the hearing, claimant denied telling any of the doctors that she saw the lightning strike the phone or the computer.

similarly situated could have avoided." The deputy specifically rejected employer's

"inferential[]" argument that:

> because the telephone and computer equipment involved [sustained no damage], the incident did not occur, and the claimant could not have been injured. . . . The fact that other employees at [employer]'s facility were unaffected only proves the claimant's case that she was, by virtue of her operation of the switchboard, at greater risk of injury during the storm than anyone else.

The full commission affirmed the award of benefits, explaining:

> From this record, we agree with the deputy commissioner that the injury arose out of the employment. The deputy commissioner explicitly found the claimant to be credible. She credibly testified that she was talking at a telephone while operating the employer's switchboard when she saw a lightning bolt and felt shocked. Her co-worker corroborated the incident. We agree with the deputy commissioner that the claimant's employment, and in particular, her use of the employer's switchboard equipment during a thunderstorm, brought into existence a special or peculiar risk of electrical shock through a lightning strike.

ANALYSIS

Employer concedes claimant was struck by lightning, but argues no evidence supports a finding that her employment placed her at greater risk of being struck. Based on the record and controlling precedent, we agree with employer.

In order for an employee to recover under the Workers' Compensation Act, she must prove, by a preponderance of the evidence, Hercules, Inc. v. Stump, 2 Va. App. 77, 79, 341 S.E.2d 394, 395 (1986), that she suffered an "injury by accident arising out of and in the course of the employment." Code § 65.2-101 (definition of "injury" for Workers' Compensation Act cases). "The phrase arising 'in the course of' refers to the time, place, and circumstances under which the accident occurred. The phrase arising 'out of' refers to the origin or cause of the injury." County of Chesterfield v. Johnson, 237 Va. 180, 183, 376 S.E.2d 73, 74 (1989). Our focus in this case concerns the latter inquiry -- whether claimant's injury arose "out of" her

- 4 -

employment. Under this prong of the test, "[h]azards to which the general public is equally exposed are noncompensable." Lucas v. Fed. Express Corp., 41 Va. App. 130, 134, 583 S.E.2d 56, 58 (2003). In order to be entitled to compensation under the "arising out of" prong, an employee "must prove that the employment activity in which she was engaged exposed her to the injurious risk to an extent to which people were not ordinarily exposed, and thus caused her injuries." Id. at 134, 583 S.E.2d at 59.

This determination involves a mixed question of law and fact. Mullins v. Westmoreland Coal Co., 10 Va. App. 304, 307, 391 S.E.2d 609, 611 (1990). Therefore, this Court is bound by the commission's factual findings so long as they are supported by credible evidence, even if "contrary evidence may be found in the record." Manassas Ice & Fuel Co. v. Farrar, 13 Va. App. 227, 229, 409 S.E.2d 824, 826 (1991). See Code § 65.2-706(A) (commission's award "shall be conclusive and binding as to all questions of fact.").

We recently considered, in Lucas, 41 Va. App. 130, 583 S.E.2d 56, the issue of whether injuries caused by a lightning strike arose out of the claimant's employment. We find Lucas compels our decision in this case and requires us to reverse the commission's decision.

Lucas recites the rule for compensability of injuries flowing from natural disasters as follows:

> "If an employee is injured by some natural force, such as . . . [being] struck by lightning during a storm, . . . the event does not in and of itself fasten liability on the employer. The theory is that death or any incapacity to work resulting from some natural force operating directly upon the victim without the intervention of any other agency or instrumentality, arises not out of the employment but is due solely to an act of God. *However, when the nature of the employment, or some condition, or environment therein, brings into existence a special or peculiar risk to the disastrous forces of nature, the injury or death of an employee may be compensated as a risk of the employment.* The applicable test seems to be not whether the injury was caused by an act of God, but whether the employment collaborated in causing the injury or death."

- 5 -

Id. at 134-35, 583 S.E.2d at 59 (quoting Elmer H. Blair, Reference Guide to Workmen's Compensation § 9.02 (1974)) (emphasis added).

In Lucas, the employee, a driver for Federal Express, was struck by lightning while she sat in her delivery truck with her left hand on the truck's metal steering wheel and with her right hand inserting the key into the truck's ignition. Id. at 132, 583 S.E.2d at 57-58. Lucas testified that the truck was made almost entirely of metal and contained an antenna, computer equipment, and a CB radio. Id. at 132 n.1, 583 S.E.2d at 58 n.1. The commission concluded no evidence established "'she suffered an injury which arose from a heightened risk of her employment.'" Id. at 133, 583 S.E.2d at 58. In affirming the denial of benefits, we noted that the record contained no evidence "relating how [the truck's electrical and structural] characteristics caused [Lucas's] injury by exposing her to a particular risk of injury from lightning not otherwise experienced by any other person in the same vicinity." Id. at 136, 583 S.E.2d at 59-60.

In deciding Lucas, we discussed the Supreme Court's holding in Scott County School Board v. Carter, 156 Va. 815, 159 S.E. 115 (1931). 41 Va. App. at 135-36, 583 S.E.2d at 59. Carter involved a teacher who was killed when a cyclone destroyed the schoolhouse in which she worked. 156 Va. at 816, 159 S.E. at 116. We noted the Supreme Court's focus in Carter on the commission's finding that the location of the schoolhouse "'on an eminence on a plateau, at a point where the wind blew more continually than at other points,'" made the schoolhouse "'more susceptible to[] the hazard of storms.'" Lucas, 41 Va. App. at 135, 583 S.E.2d at 59 (quoting Carter, 156 Va. at 817, 159 S.E. at 116). As a result, the Supreme Court held credible evidence supported the commission's decision in favor of Carter, and it affirmed the award.

In the present case, while the commission expressly articulated a connection between the conditions of claimant's employment and an increased risk of being struck by lightning, no evidence in the record supports this conclusion. No evidence suggests claimant's use of the

computer or telephone created a "heightened risk of injury" beyond the general risk to anyone in a building during a storm. No testimony or other evidence indicates that claimant, while working at her station, was at a greater risk of being struck by lightning than the average person.

We find nothing that distinguishes <u>Lucas</u> from the instant case. Similar to <u>Lucas</u>, the claimant here was in close proximity to a computer. The evidence in <u>Lucas</u> included the additional factor that Lucas was sitting in a metal vehicle with an antenna. In denying her claim for compensation, the <u>Lucas</u> Court held:

> While Lucas provided testimony of the truck's electrical and structural characteristics, there is no competent evidence relating how these characteristics caused her injury by exposing her to a particular risk of injury from lightning not otherwise experienced by any other person in the same vicinity.
>
> Absent competent testimony that the particular electrical or structural characteristics of the truck caused her injury, the commission was unable to determine that the injuries arose from her employment.

<u>Id.</u> at 136, 583 S.E.2d at 59-60. Here, as in <u>Lucas</u>, no evidence indicates that the characteristics of claimant's employment exposed her to a particular risk of injury not generally experienced by other people. Although she sat at a computer talking on the phone, nothing proves that this workplace "'corroborated in causing the injury.'" <u>Id.</u> at 135, 583 S.E.2d at 59 (quoting Blair, § 9.02).

"Factual findings of the commission that are supported by credible evidence are conclusive and binding upon this Court on appeal." <u>Southern Iron Works, Inc. v. Wallace</u>, 16 Va. App. 131, 134, 428 S.E.2d 32, 34 (1993). However, credibility of the evidence is not in issue here. It is uncontroverted that claimant was shocked by the lightning and was injured by the lightning. It is uncontroverted that claimant was on the switchboard when the accident occurred. Our inquiry is whether the commission had any evidence to support its conclusion that "use of . . . employer's switchboard equipment during a thunderstorm[] brought into existence a

special or peculiar risk of electrical shock through a lightning strike." Here, no evidence was presented that claimant was at an increased risk of being struck during a lightning storm due to her working conditions that day. Because no evidence supports the commission's ruling on this point, we reverse.

Reversed.

Elder, J., dissenting:

The majority concludes our recent holding in <u>Lucas v. Federal Express Corp.</u>, 41 Va. 130, 583 S.E.2d 56 (2003), compels the conclusion no evidence supports the commission's finding that claimant's employment placed her at a greater risk of being struck by lightning. I find <u>Lucas</u> distinguishable. In <u>Lucas</u>, the commission made no finding of causation. In claimant's case, by contrast, the commission expressly found claimant's frequent and sustained "use of . . . employer's switchboard equipment during a thunderstorm[] brought into existence a special or peculiar risk of electrical shock through a lightning strike." Thus, I respectfully dissent.

I would hold that "[c]ertain facts as to the operation of lightning have become matters of common knowledge, of which judicial notice may be taken." <u>Bauer's Case</u>, 49 N.E.2d 118, 120 (Mass. 1943); <u>see also, e.g.</u>, <u>Truck Ins. Exch. v. Ind. Acc. Comm'n</u>, 75 P.2d 884, 885-87 (Cal. Ct. App. 1946); <u>Van Kirk v. Hume-Sinclair Coal Mining Co.</u>, 49 S.W.2d 631, 634-35 (Mo. Ct. App. 1932). "Judicial notice permits a court to determine the existence of a fact without formal evidence tending to support that fact." <u>Scafetta v. Arlington County</u>, 13 Va. App. 646, 648, 414 S.E.2d 438, 439, <u>aff'd on reh'g</u>, 14 Va. App. 834, 425 S.E.2d 807 (1992). "A trial court may take judicial notice of those facts that are either (1) so 'generally known' within the jurisdiction or (2) so 'easily ascertainable' by reference to reliable sources that reasonably informed people in the community would not regard them as reasonably subject to dispute." <u>Taylor v. Commonwealth</u>, 28 Va. App. 1, 7-8, 502 S.E.2d 113, 116 (1998) (*en banc*) (citations omitted).

While "the fact of judicial notice must appear from the record," <u>Sutherland v. Commonwealth</u>, 6 Va. App. 378, 383, 368 S.E.2d 295, 298 (1988), "a trial court need not intone the words 'judicial notice' in order to notice a fact," <u>Dillard v. Commonwealth</u>, 28 Va. App. 340, 347, 504 S.E.2d 411, 414 (1998); <u>see</u> <u>Taylor</u>, 28 Va. App. at 7-8, 502 S.E.2d at 116. "The taking

of judicial notice is generally within the discretion of the trial court." Ryan v. Commonwealth, 219 Va. 439, 446, 247 S.E.2d 698, 703 (1978).

In Lucas, the employee, a delivery driver for Federal Express, was struck by lightning while she sat in the seat of her delivery truck with her left hand on the truck's metal steering wheel and used her right hand to insert the key into the truck's ignition. Id. at 132, 583 S.E.2d at 57-58. Lucas testified that the truck was made almost entirely of metal and had an antenna, computer equipment and a CB radio. Id. at 132 n.1, 583 S.E.2d at 58 n.1. The deputy and commissioner concluded Lucas failed to establish "any heightened risk of injury that stemmed from [Lucas's] employment as a delivery driver." Id. at 133, 583 S.E.2d at 58. Absent such evidence, we held credible evidence supported the commission's finding that Lucas failed to meet her burden of proof. Id. at 136, 583 S.E.2d at 60.

In deciding Lucas, 41 Va. App. at 135-36, 583 S.E.2d at 59, we discussed the Supreme Court's holding in Scott County School Board v. Carter, 156 Va. 815, 159 S.E. 115 (1931). Carter involved a teacher who was killed when a cyclone destroyed the schoolhouse in which she worked. Id. at 816, 159 S.E. at 116. We noted the Supreme Court's focus in Carter on *the commission's finding that the location of the schoolhouse* "'on an eminence on a plateau, at a point where the wind blew more continually than at other points,'" *made the schoolhouse "'more susceptible to[] the hazard of storms*.'" Lucas, 41 Va. App. at 135, 583 S.E.2d at 59 (quoting Carter, 156 Va. at 817, 159 S.E. at 116 (emphases added)). In Carter, "the Supreme Court quoted or paraphrased these findings a total of four times, emphasizing that 'these are the declared facts to which we must give credence' and that, 'these being the conditions which obtained at the time, we are bound to say the employment subjected [Carter] to greater exposure than were those persons generally in that locality.'" Lucas, 41 Va. App. at 135-36, 583 S.E.2d at

- 10 -

59 (quoting Carter, 156 Va. at 821, 159 S.E. at 117 (citation omitted)). As a result, the Court held credible evidence supported the commission's decision, and it affirmed the award.

In claimant's case, like in Carter, and in contrast to Lucas, the commission expressly articulated a connection between the conditions of claimant's employment and the force of nature that caused her injury, stating claimant's frequent and sustained "use of . . . employer's switchboard equipment during a thunderstorm[] brought into existence a special or peculiar risk of electrical shock through a lightning strike." The commission noted claimant's testimony that she heard a loud noise in the phone when the lightning struck; other evidence permitted a finding that claimant's telephone call was disconnected and that her computer may have flickered, as well, lending support to the conclusion that claimant's use of the switchboard and computer, required by her employment, heightened her risk of being struck by lightning. The deputy and commission expressly found credible the testimony of claimant and her co-worker. The fact that neither the switchboard phone nor the computer appeared to have sustained any damage from the lightning strike does not compel a different result.

Because the commission expressly articulated a connection between the conditions of claimant's employment and the force of nature that caused her injury -- a causal connection of a type which the Supreme Court has implicitly permitted the commission to take judicial notice, see Carter, 156 Va. at 817, 821, 159 S.E. at 116, 117; Lucas, 41 Va. App. at 135-36, 583 S.E.2d at 59 -- I would conclude credible evidence supports the commission's award of benefits.