COURT OF APPEALS OF VIRGINIA

Present:   Judges Clements, Haley and Beales
Argued at Richmond, Virginia

RIVANNA WATER & SEWER AUTHORITY
 AND VIRGINIA MUNICIPAL GROUP
 SELF-INSURANCE ASSOCIATION;
 VML INS. PROGRAMS                            MEMORANDUM OPINION[*] BY
                                            JUDGE RANDOLPH A. BEALES
v.        Record No. 0426-07-2                 DECEMBER 18, 2007

ROSE LaFLEUR


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          Ralph L. Whitt, Jr. (Whitt & Del Bueno, on briefs), for appellants.

          Craig B. Davis (Emroch & Kilduff, LLP, on brief), for appellee.


        Rivanna Water & Sewer Authority and its insurer (collectively employer) appeal from a

divided commission opinion that awarded benefits to Rose LaFleur (claimant) for injuries

sustained from a lightning strike.  The sole issue before the commission and in this appeal is

whether or not claimant's injuries arose out of her employment.  For the reasons that follow, we

reverse the commission's decision.

                                      BACKGROUND

        "In reviewing the commission's judgment, we view the evidence in the light most

favorable to [claimant], the prevailing party below."  Wainwright v. Newport News Shipbuilding

& Dry Dock Co., 50 Va. App. 421, 430, 650 S.E.2d 566, __ (2007).  "'Factual findings of the . . .

[c]ommission will be upheld on appeal if supported by credible evidence.'"  Id. (quoting James

v. Capitol Steel Constr. Co., 8 Va. App. 512, 515, 382 S.E.2d 487, 488 (1989)).

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Claimant started working as a water operator at the Rivanna Water and Sewer plant in May 2004. On June 16, 2004, claimant was injured while a thunderstorm passed over the plant. While she was "in the process of" taking water samples from a faucet, "there was a flash, and a noise, and a streak, and a zzzzz, and [she] wasn't sure what happened." Claimant, who was facing a window, testified, "the flash was everywhere. It was brighter than anything I've ever seen." She remembered hearing a loud noise that sounded like the window breaking, saw a red or orange streak on the side, "and then it chuuuuu, like sparks." She stated that she probably had her right hand on the faucet or that her hand was still very near the faucet and did not remember whether or not the water was running when this occurred.

Dr. William Snuffin treated claimant at Martha Jefferson Hospital on the date of the incident. Snuffin found "no appreciable or identifiable injury" but "suspect[ed] this could represent a flash injury from lightning." With the assistance of her supervisor, Richard DeFibaugh, claimant completed an internal accident report while at the hospital. She later filed an accident report with the commission on September 24, 2004, which stated her injury occurred when "lightning struck close by." The accident report identified claimant's injuries as tingling in her right extremities and a headache. Claimant returned to work after the incident, was placed on leave in September 2004, and was ultimately terminated in November 2004.

DeFibaugh testified that the equipment at the plant loses power fairly easily during a thunderstorm but could not recall a time during his thirty-seven-year tenure when the plant was actually struck by lightning. He examined the plant's operating equipment after the storm, found that the equipment was functioning properly, and was unable to discover physical evidence of a lightning strike at the plant. DeFibaugh explained that only one system of pipes in the facility is metal and that all of the other pipes in the plant are made from non-conductive, flexible plastic. The metal pipe carries wastewater from the plant into a lagoon and is not connected to any of the

other pipes in the building. The pipe where claimant was working during the thunderstorm is made out of the non-conductive, flexible plastic.

Dr. Diane Landauer, a family practice physician, treated claimant for a year following the incident. In a letter containing her findings, Landauer opined,

> In accordance with the history [claimant] provided, the injuries and symptoms for which I am treating [claimant] are consistent with a lightning injury resulting from electrical current traveling through conductive metal into her right hand. The fact that her hand may not have been actually touching the metal faucet at the exact moment of the lightning strike is irrelevant as the electrical charge in these instances will arc into an individual's body.

According to Landauer, her findings were based upon her treatment of claimant and "a review of relevant medical literature related to the diagnosis and treatment of lightning strike injuries."

Dr. Mary Ann Cooper, "an expert in emergency medicine and the diagnosis and treatment of lightning and lightning-related injuries and the mechanism of such injuries and in lightning safety and injury avoidance," reviewed claimant's records and prepared a report at claimant's request. Cooper, though, never visited the water plant. Cooper opined that the plant was more likely to be struck by lightning because it is "out in the open," "up on a small hill," and "had an antenna coming from the roof." Cooper also stated that the facility's piping "could well have transmitted [lightning] in through the plumbing system to where [claimant] was working" and that the water "had enough contaminants to be able to conduct electricity fairly well and lightning very well." Cooper further explained the concept of arcing, where lightning "can shoot across, through the air, because of the high voltage nature of the lightning." Because lightning can arc, Cooper concluded that claimant could have been struck even if she was standing "nearby" and not actually touching the faucet. Cooper explained, "And by nearby, I mean within a very short proximity of a few inches. I don't mean feet away."

Ronald Holle, "an expert in the field of meteorology and lightning safety and casualty," opined,

> [T]he situation here is that people at this facility handle things that are related to water. And with electronic systems around there also, power lines, and so on. So the footprint of the facility has a connection to this - - to someone working inside of this building. That's more than most people have. If you're in a neighborhood with houses fairly close by, normally you aren't too much affected by a flash when it hits a power pole a block or two away. But in this case when it hits, it will hit the facility somewhere around.

Holle explained that in using the term "footprint," he

> mean[s] the whole complex there is connected by wiring and plumbing. And so a strike to any part of that facility, including the fences or the pipes, or whatever, that are aboveground, certainly would be reasonable to have expectation that the current would travel through the wiring and the plumbing and reach [claimant].

When asked whether claimant was exposed to a greater risk of a lightning strike than the general public, Holle opined, "At this particular facility at that particular time in that situation, absolutely, yes."

A deputy commissioner entered an award in favor of claimant for temporary total disability benefits, medical benefits, and attorney's fees. The commission's majority affirmed the deputy commissioner's award, finding,

> as the Deputy Commissioner correctly held, the evidence in the case at bar not only establishes the propensity of the physical location of the plant to receive a lightning strike, but also establishes a special risk posed by the greater likelihood of conduction of current through the large amount of water, pipes, and metal.

This appeal followed.

## ANALYSIS

An injury, as defined by the Workers' Compensation Act, "means only injury by accident arising out of and in the course of the employment." Code § 65.2-101.

- 4 -

> "The phrases arising 'out of' and arising 'in the course of' are separate and distinct. We have long held that they mean different things and that proof of both is essential to recovery under the Act. . . . The phrase arising 'in the course of' refers to the time, place, and circumstances under which the accident occurred. The phrase arising "out of" refers to the origin or cause of the injury."

Lucas v. Fed. Express Corp., 41 Va. App. 130, 133-34, 583 S.E.2d 56, 58 (2003) (quoting County of Chesterfield v. Johnson, 237 Va. 180, 183, 376 S.E.2d 73, 74 (1989)). In short, "There must be a link between the injury and the employment." Id.

The sole issue to be decided in this appeal is whether or not claimant's injury arose out of her employment. To resolve this issue, "Virginia recognizes the 'actual risk' test which requires that the employment subject the employee to the particular danger that brought about his or her injury." Lipsey v. Case, 248 Va. 59, 61, 445 S.E.2d 105, 106 (1994). "Consequently, an accident arises out of the employment when it is apparent to a rational mind, under all attending circumstances, that a causal connection exists between the conditions under which the work is required to be performed and the resulting injury." Id. Generally speaking, "[h]azards to which the general public is equally exposed are non-compensable." Lucas, 41 Va. App. at 134, 583 S.E.2d at 58. The foregoing "determination involves a mixed question of law and fact." Va. Empl. Comm'n v. Hale, 43 Va. App. 379, 385, 598 S.E.2d 327, 330 (2004). "Accordingly, while we must defer to the factual findings of the commission" in this case, "we review *de novo* the commission's application of the law to those findings" of fact. Roanoke Belt, Inc. v. Mroczkowski, 20 Va. App. 60, 68, 455 S.E.2d 267, 271 (1995).

In Lucas, we recited the following "general rule regarding natural disasters," and more specifically, lightning strikes:

> "If an employee is injured by some natural force, such as . . . [being] struck by lightning during a storm, . . . the event does not in and of itself fasten liability on the employer. The theory is that death or any incapacity to work resulting from some natural force operating directly upon the victim without the intervention of any

- 5 -

other agency or instrumentality, arises not out of the employment but is due solely to an act of God. *However, when the nature of the employment, or some condition, or environment therein, brings into existence a special or peculiar risk to the disastrous forces of nature, the injury or death of an employee may be compensated as a risk of the employment.* The applicable test seems to be not whether the injury was caused by an act of God, but whether the employment collaborated in causing the injury or death."

Lucas, 41 Va. App. at 134-35, 583 S.E.2d at 59 (quoting Elmer H. Blair, Reference Guide to Workmen's Compensation § 9.02 (1974)) (emphasis added). "This position recognizes the causal connection required by the actual risk test that Virginia follows." Id. at 135, 583 S.E.2d at 59. This Court applied this actual risk test in both Lucas and Hale, both of which dealt with injuries sustained during a lightning strike.

In Lucas, the claimant, a delivery driver, "presented evidence of the [delivery] truck's electrical and structural characteristics," including evidence that the truck was metal, "had an antenna, a computer system, and a communication radio." Id. at 136, 583 S.E.2d at 59. However, the claimant did not present evidence that illustrated how the physical "characteristics caused her injury by exposing her to a particular risk of injury from lightning not otherwise experienced by any other person in the same vicinity," and, therefore, her injury was not compensable under the Act. Id. at 136, 583 S.E.2d at 59-60. Likewise, in Hale, benefits were denied because the claimant did not prove how using a computer or a telephone "created a 'heightened risk of injury' beyond the general risk to anyone in a building during a storm." Hale, 43 Va. App. at 386, 598 S.E.2d at 331.

The actual risk test applied in Lucas and Hale stands in contrast to the increased risk test, which is used in and by some other jurisdictions. In an increased risk analysis,

"[T]he issue from that point on has become one of physics rather than of law, namely, whether the work conditions -- such as height above the surrounding area, nearness to the trees or tall structures, nearness to metallic objects likely to attract lightning, or presence

of wetness and other conditions facilitating transmission of
lightning -- enhanced the probability of injury from lightning."

Lucas, 41 Va. App. at 135, 583 S.E.2d at 59 (quoting Arthur Larson & Lex K. Larson, Larson's
Workers' Compensation Law § 5.01[1] (2002)). Therefore, a claimant could theoretically pass
the increased risk test by merely identifying physical characteristics of the location of
employment that increase the propensity of that location to receive a lightning strike. As our
precedents make clear, though, this type of evidence alone does not prove causation when
applying the actual risk test.

Here, Dr. Cooper and Ronald Holle extensively discussed the plant's location, including
the presence of pipes and water, and opined that the physics of the plant exposed claimant to a
greater risk of a lightning strike than a member of the general public faces. The commission
explicitly based its finding of a "propensity of the physical location of the plant to receive a
lightning strike" upon the physical characteristics identified by the experts. In addition, the
commission's other finding -- the creation of "a special risk posed by the greater likelihood of
conduction of current through the large amounts of water, pipes, and metal" – is merely a
restatement of its propensity finding and is also based solely upon the physics of the plant. Thus,
while the commission's majority explicitly recognized that Virginia applies the actual risk test to
this inquiry, both of its findings appear based upon an erroneous application of the increased risk
test rather than the actual risk test adopted and used by Virginia courts.

The evidence in the record reflects that only one system of pipes in the facility, which
carries wastewater *away from* the plant, was made of metal. Claimant was clearly not near that
system of pipes when she was injured. The other pipes, as Richard DeFibaugh explained, were
made of non-conductive, flexible plastic. Furthermore, claimant was not completely sure if she
was actually touching the faucet (or, if not, how far from it she was when lightning apparently
struck). In addition, she was completely uncertain if water was actually flowing from the faucet

- 7 -

at that moment.  While arcing, as Dr. Cooper explained, could have caused claimant's injury, claimant bore the burden of showing her hand was "a very short proximity" away from the faucet.  When asked how far her "right hand was from where the water comes out of the faucet" at the time that she believed she was struck, claimant responded that she did not know.  While it is certainly understandable that the details of this ordeal are difficult for claimant to recall, she must still meet her burden in demonstrating that her injury arose out of her employment.  See Merillat Indus. v. Parks, 246 Va. 429, 431, 436 S.E.2d 600, 601 (1993) ("[T]he claimant has the burden of showing that the injury or disease arose out of and in the course of the employment.").

In addition, we do not find the Virginia Supreme Court's decision in Scott County School Board v. Carter, 156 Va. 815, 159 S.E. 115 (1931), is analogous to the actual facts and situation of the case at bar.  In Carter, the Court affirmed an award where a schoolteacher was killed "by reason of a cyclone demolishing the building in which she was a teacher," and "the schoolhouse [where she was killed] was located on an eminence on a plateau, at a point where the wind blew more *continually* than at other points, and so located as to be exposed to, and more susceptible to, the hazard of storms."  Id. at 816-17, 159 S.E. at 116-17 (emphasis added).  Here, Richard DeFibaugh, the plant's manager, did not recall the plant being struck by lightning at any time, prior to this incident, during his thirty-seven-year tenure at the facility.  DeFibaugh's testimony on this point was undisputed, and no other evidence in the record demonstrates that the plant was struck by lightning in the past.  Because lightning, by its very nature, is a much more isolated and random occurrence than wind, DeFibaugh's recollection that the facility had not been struck by lightning in nearly forty years stands in stark contrast to the evidence in Carter of the *continual* or, at least, frequent hazard of wind the schoolhouse in the mountains was known to have experienced.

As discussed above, Virginia applies the actual risk test in deciding whether claimant's injuries arose out of her employment. That test requires proof that the nature of claimant's employment, and not merely the physical properties of the location of employment, exposed the claimant to a particular risk of injury that is usually not faced by a member of the general public. The commission, in its opinion on this matter, actually erroneously based its findings upon an increased risk analysis focused solely on physics, with quotes, for example, about the plant's location -- "isolated, out in the open on a small hill, and had an antenna on the roof" – and the presence of pipes and water. While we do not question the experts' findings on the propensity of the physical location to receive a lightning strike, those findings, in and of themselves, cannot satisfy the actual risk test. Because the commission utilized an incorrect legal standard and hinged its award purely upon findings relating the plant's physical characteristics to a propensity of the location itself to receive a lightning strike, we find its decision is in error. Moreover, applying the actual risk test, we hold the evidence in this case does not affirmatively establish the causal link necessary to demonstrate claimant's injury arose out of her employment.

CONCLUSION

For the foregoing reasons, we reverse the commission's award of benefits to claimant.

Reversed.