COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, O'Brien and Senior Judge Annunziata
Argued at Alexandria, Virginia

PUBLISHED

SHANNON CONNER

v.      Record No. 1486-18-4

CITY OF DANVILLE

OPINION BY
JUDGE RANDOLPH A. BEALES
APRIL 23, 2019

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Michael A. Kernbach for appellant.

Roberta Ann Perko (Christopher M. Kite; Lucas & Kite, PLC, on
brief), for appellee.

Appellant Shannon Conner, a former corporal for the City of Danville Police Department,

appeals the decision of the Virginia Workers' Compensation Commission (the Commission)

denying her benefits for injuries that occurred when she slipped on wet grass and almost fell

while seeking additional shelter from a storm.  On appeal, Conner argues that the Commission

erred in concluding that her injuries did not arise out of her employment, in finding that her

injuries were caused by an Act of God, and in concluding that Code § 65.2-301.1 did not apply

to make her injuries compensable under the Workers' Compensation Act.

I. BACKGROUND

Conner filed several claims with the Commission for medical benefits and for periods of

wage loss benefits, alleging that she had sustained a compensable injury by accident to her right

knee and lower back on February 24, 2016, while she was working as a corporal for the City of

Danville Police Department.

The evidence presented at the hearing before the deputy commissioner on Conner's claims showed that, on February 24, 2016, Conner and other officers from the City of Danville Police Department were conducting surveillance at a duplex. During the surveillance, the officers located a homicide suspect. Conner and a fellow officer, Corporal Valerie Jennings, began interviewing the suspect on the sidewalk outside the duplex. They were going to move the location of the interview to the inside of a police vehicle when Corporal Jennings suggested that they continue the interview on the porch of the vacant side of the duplex, while the other officers executed a search warrant on the residence on the duplex's other side. The porches of the duplex were separated by a partition.

Conner testified that the weather changed quickly during the interview of the suspect. She stated that "it started raining really hard" and "the wind started picking up a great deal" and that it began hailing. The deputy commissioner in her opinion noted that, in a deposition taken prior to the hearing, Conner testified that "it was a tornado moving through." She stated that, because of the change in the weather, they decided to leave the porch and move the interview to the other side of the residence where the search warrant was being executed. Conner testified:

> We had decided that we were going to try to move the suspect over to that area [the other side of the duplex], so Investigator Jennings is behind me. The suspect took off, went off the porch, and I took a left turn off of the porch onto the grassy area. It was hail[ing] and it was raining. I proceeded to try to get inside when I slipped, my right leg went towards the right, and the left side of my body twisted. I almost fell, but I didn't completely fall. I caught myself just before hitting the ground. And then I picked back up and started running back into the residen[ce].

Conner explained that she "was running.  Well I guess you would say trotting," at the time that she almost fell.[1]

Neither Conner nor Jennings continued interviewing the suspect after they left the porch. Instead, Conner testified that, when they reached the other side of the duplex, they "were just simply in there, assisting on the search warrant itself."  The deputy commissioner noted that, in Conner's deposition testimony, Conner agreed that the purpose of leaving the porch was to get out of the weather.

Conner testified that as the day continued, her knee became painful, and she reported her injury to her supervisor.  She sought medical treatment later that day and eventually learned, through her continued treatment, that three discs in her back had apparently been affected by her near fall and that there was "a pinched nerve involved."  She underwent back surgery on July 14, 2016.  On October 17, 2016, one of Conner's physicians informed her that, even though her condition may improve, she would not be able to perform all of the necessary duties of her position.  She separated from the police department on November 30, 2016, and subsequently found work with a different employer.

The deputy commissioner issued an opinion denying Conner benefits because she found that Conner's injuries did not arise out of her employment.  She found that "there was no evidence that the claimant was working at a location where her risk of exposure to the tornado was enhanced" and that Conner "was simply trying to get further out of the weather and in so doing, she slipped on the wet grass."  Consistent with these findings, the deputy commissioner

---

[1] A DVD from Corporal Jennings's body camera was introduced into evidence. However, as the deputy commissioner found, "Cpl. Jennings was running when the DVD recorded the claimant also running to the duplex.  As such, the quality was poor and it was difficult to see any slip by the claimant."

concluded that Conner's "claim of compensability based upon having been exposed to this act of God is denied."

Following the deputy commissioner's decision, Conner's attorney filed a motion for reconsideration with the deputy commissioner, requesting that she reconsider Conner's claims in light of Code § 65.2-301.1. The deputy commissioner denied the motion for reconsideration, finding the statute inapplicable to Conner's case.

Conner sought review by the full Commission, which then affirmed the decision of the deputy commissioner – with Commissioner Marshall dissenting. The Commission agreed with the deputy commissioner's denial of benefits, based on Conner's exposure to an Act of God, explaining:

> claimant temporarily suspended her interview and was injured as she hastened to reach shelter to avoid the rain and windy conditions, i.e., an Act of God. Contrary to the dissent's depiction, this was not a situation where an employee's employment required her to perform job duties in a hazardous weather situation. Instead, the evidence illustrated that the claimant had ceased and suspended the work-related tasks at the time of the injury. The claimant simply had no greater risk than anyone else who happened to be outside on that day.

The majority of the full Commission also concluded that Code § 65.2-301.1 was inapplicable. It determined that the situation described by Conner was not a "'situation[] where weather constitutes a particular risk of . . . employment' as contemplated by the General Assembly." (Alterations in original).

Commissioner Marshall dissented from the opinion of the full Commission. In his dissent, he disagreed with the full Commission's conclusion that Conner was injured by an Act of God, and instead concluded that Conner should be awarded benefits because "falling on wet grass to get out of a rainstorm" was a risk of Conner's employment. He stated that the "risk of severe weather is an actual risk of the employment" for police officers because police officers

- 4 -

"cannot enter a private building or home to seek shelter from the weather without an invitation, probable cause, or a search warrant." Commissioner Marshall also stated that, if Conner's injury was caused by an Act of God, her injury still arose out of her employment because she "was required to remain outdoors in connection with an active homicide investigation [and] [a]s a result, she was exposed to a peculiar weather event." Finally, Commissioner Marshall, relying on language in a 2013 Fiscal Impact Statement from the General Assembly, concluded in his dissent that Code § 65.2-301.1 required the Commission to award Conner benefits because he was persuaded that the purpose of the statute was "to eliminate the need for the public safety officer to prove a greater risk" of injury from a weather-related event than the general public.

Conner appealed the Commission's denial of benefits to this Court.

II. ANALYSIS

In order to prove that an injury is compensable under the Workers' Compensation Act, an employee must prove that his or her injury occurred "by accident arising out of and in the course of the employment." Haley v. Springs Glob. U.S., Inc., 54 Va. App. 607, 612 (2009) (quoting Code § 65.2-101). Whether an injury arises out of the employment "involves a mixed question of law and fact, which we review *de novo* on appeal." Blaustein v. Mitre Corp., 36 Va. App. 344, 348 (2001). However, we are bound by the Commission's factual findings and reasonable inferences drawn from the evidence if they are supported by credible evidence in the record. Tuck v. Goodyear Tire & Rubber Co., 47 Va. App. 276, 282 (2005).

A. Whether Conner's Injuries Arose Out of Her Employment

The issue in this appeal is whether Conner's injuries arose out of her employment. In determining whether an employee's injury arises out of the employment, "Virginia applies the 'actual risk' test, which 'requires that the employment subject the employee to the particular danger that brought about his or her injury.'" Smithfield Packing Co. v. Carlton, 29 Va. App.

- 5 -

176, 181 (1999) (quoting Lipsey v. Case, 248 Va. 59, 61 (1994)). The actual risk test "requires only that the employment expose the workman to the particular danger from which he was injured, notwithstanding the exposure of the public generally to like risks." Lucas v. Fed. Exp. Corp., 41 Va. App. 130, 134 (2003). The test is satisfied "only . . . 'if there is a causal connection between the claimant's injury and the conditions under which the employer requires the work to be performed." O'Donoghue v. United Continental Holding, Inc., 70 Va. App. 95, 104 (2019) (quoting Va. Tree Harvesters, Inc. v. Shelton, 62 Va. App. 524, 534 (2013)).

On appeal, Conner argues that the risk of her slipping on wet grass was an employment-related risk because her employment duties "brought her to the duplex and detained the homicide subject while they were subjected to a blinding rain storm. It was perfectly logical that she, the subject and Jennings seek cover from the storm and as she ran, she slipped which caused her injuries." While Conner's argument supports the conclusion that her injuries occurred in the course of her employment, the fact that Conner's job happened to bring her to the location where she was injured is insufficient to show that her injury actually arose out of her employment. See Clifton v. Clifton Cable Contracting, L.L.C., 54 Va. App. 532, 539 (2009) ("[T]he phrase 'in the course of' pertains to the time, place and circumstances under which the accident occurred." (quoting Grand Union Co. v. Bynum, 226 Va. 140, 143 (1983))).

The full Commission found that Conner's injury did not arise out of her employment because, at the time Conner left the porch and slipped on the wet grass, she had "ceased and suspended the work-related tasks." It found that "the suspect was not under arrest nor in custody such that an officer needed to contain, control, or pursue the suspect" and that Conner's reason for trotting away from the interview on the porch was "for the purpose of removing herself from the rain" rather than for any employment-related purpose.

These findings by the Commission are supported by credible evidence in the record. Despite Conner's characterization of the suspect as being "detained," the suspect was not under arrest or actually in custody, which could necessitate their following him quickly off the porch to keep him in custody. According to Conner's testimony, they did not even continue interviewing the suspect once they left the porch. In addition, as the deputy commissioner noted, in Conner's deposition testimony, she stated that her purpose in leaving the porch was to "get out of the weather" – rather than to chase the suspect or to accomplish an employment-related task. Therefore, because Conner did not establish that the conditions of her employment subjected her to the particular danger of slipping and almost falling on wet grass during a storm, we agree with the Commission that Conner's injury was not caused by an actual risk of her employment.[2]

B. Whether Conner's Employment Collaborated with an "Act of God" to Cause Her Injuries

Conner also contends that the weather was a "special risk" of her employment because her job as a police officer required her to be subjected to the elements. In support of this argument, Conner largely adopts the argument of the dissenting commissioner. She emphasizes the dissenting commissioner's point that, as a police officer, she did "not have the luxury or flexibility of leaving the scene to seek shelter indoors." Even though Conner's injury occurred during a weather-related event, the Commission found that her injury was caused by an Act of God and did not arise from her employment. We agree.

"In Virginia, under the actual risk test, proof of an injury while at work from lightning or some other 'natural force,' standing alone, is considered 'an act of God' and does not establish that the employee is entitled to coverage under the Act." O'Donoghue, 70 Va. App. at 104

---

[2] Conner cites to several cases from the Workers' Compensation Commission that she contends support her recovery of benefits. However, decisions from the Workers' Compensation Commission are not binding on this Court, and the facts of those cases are, in any event, distinguishable from the case now before us.

(quoting Va. Emp't Comm'n v. Hale, 43 Va. App. 379, 385 (2004)). "However, when the nature of the employment, or some condition, or environment therein, brings into existence a special or peculiar risk to the disastrous forces of nature, the injury or death of an employee may be compensated as a risk of the employment." Hale, 43 Va. App. at 385 (emphasis omitted) (quoting Lucas, 41 Va. App. at 135). See Scott Cty. Sch. Bd. v. Carter, 156 Va. 815, 820-21 (1931) (affirming Commission's award of benefits where "the school building [where claimant was killed during a tornado] was on a plateau which was on an eminence, where the wind blew more continually than at other points, and so located as to be exposed to and more susceptible to the hazard of storms"). "The applicable test seems to be not whether the injury was caused by an Act of God, but whether the employment collaborated in causing the injury or death." Hale, 43 Va. App. at 385 (quoting Lucas, 41 Va. App. at 135). "To recover, 'an employee "must prove that the employment activity . . . exposed [him or] her to the injurious risk to an extent to which [members of the general public] were not ordinarily exposed, and thus caused [the] injuries.'"" O'Donoghue, 70 Va. App. at 105 (quoting Hale, 43 Va. App. at 384-85). "Hazards to which the general public is equally exposed are non-compensable." Lucas, 41 Va. App. at 134.

The Commission found that "this was not a situation where an employee's employment required her to perform job duties in a hazardous weather situation . . . . The claimant simply had no greater risk than anyone else who happened to be outside that day." Credible evidence in the record supports this finding of fact.

Contrary to Conner's arguments and the dissenting commissioner's analysis, there is no evidence in the record that Conner's employment required her to be outside in the elements while she interviewed the suspect. Instead, the record shows that the officers *chose* to conduct the interview on the porch of the vacant part of the duplex. Jennings testified – and the DVD from Jennings's body camera supports this testimony – that Conner and Jennings planned to

interview the suspect in a police vehicle, but then Jennings decided that they should conduct the interview on the porch. In addition, even if the officers were not permitted to enter the subject residence until the other officers had started to execute a search warrant, there was no evidence presented regarding the timing of the search warrant's execution that would have allowed the Commission to conclude – as the dissenting commissioner did – that Conner did not have the "luxury or flexibility of leaving the scene to seek shelter indoors."[3] Because the officers themselves chose to conduct the interview outside under the roof of the porch, Conner was exposed to the risk of being injured due to the bad weather to the exact same extent as any member of the general public who decided to move indoors after being caught in a storm. In other words, Conner failed to show that the "employment activity in which she was engaged exposed her to the injurious risk to an extent to which people were not ordinarily exposed, and thus caused her injuries." See Lucas, 41 Va. App. at 134-35.

### C. Whether Code § 65.2-301.1 Renders Conner's Claims Compensable

Conner also argues that the full Commission should not have performed an Act of God analysis because she contends Code § 65.2-301.1 "abrogate[s] the 'Act of God' defense for public safety employees in a situation such as this." On this point, on appeal, Conner largely adopts the arguments in Commissioner Marshall's dissent.

This Court reviews questions of statutory construction *de novo*. Thomas v. Commonwealth, 59 Va. App. 496, 500 (2012). "Under basic rules of statutory construction, we consider the language of these statutes to determine the General Assembly's intent from the words contained therein, unless a literal construction would yield an absurd result." Mozley v.

---

[3] The DVD of Jennings's body camera shows officers on the porch of the residence of the property to be searched at the time that Conner, Jennings, and the suspect are walking toward the porch of the vacant residence. It is unclear if any of the officers had yet entered the residence. Moments later, when Conner, Jennings, and the suspect leave the porch and run inside, however, they are able to immediately enter the suspect's residence in the duplex.

Prestwould Bd. of Dirs., 264 Va. 549, 554 (2002). "[W]hen the language of an enactment is free from ambiguity, resort to legislative history and extrinsic facts is not permitted because we take the words as written to determine their meaning." Newberry Station Homeowners Ass'n, Inc. v. Bd. of Supervisors of Fairfax County, 285 Va. 604, 614 (2013) (quoting Brown v. Lukhard, 229 Va. 316, 321 (1985)).

Code § 65.2-301.1 states, in pertinent part: "In situations where weather constitutes a particular risk of a public safety officer's employment and where the public safety officer's injury arose out of and in the course of his employment, absent a misconduct defense asserted pursuant to § 65.2-306, such injury shall be compensable under this title." Conner – like the dissenting commissioner – urges this Court to look to a Fiscal Impact Statement generated during the legislative process in interpreting the statute. However, because Code § 65.2-301.1 is "free from ambiguity," we look at the plain text of the statute to determine its meaning. In short, we take the words of the statute "as written to determine their meaning." Newberry Station, 285 Va. at 614. Because the requirements of the statute necessary for compensability are joined by the conjunctive word "and," the plain language of the statute clearly still requires the public safety officer to prove that her injuries "arose out of" the employment, and as discussed supra, Conner failed to prove that her knee and lower back injuries actually arose out of her employment.[4]

### III. CONCLUSION

In short, the Commission did not err in denying Conner benefits because Conner failed to prove that her injuries arose out of her employment. At the time that Conner apparently slipped and almost fell on the wet grass, she was not chasing the suspect. As the Commission found,

---

[4] The clear plain text of the statute shows why we do not even need to do an analysis of what any supposed legislative history was here. We do note, however, that the Fiscal Impact Statement cited by Conner and the dissenting commissioner clearly states that it is describing the bill "[a]s introduced" when the bill was later substantially amended before it was ultimately enacted into law.

there was no evidence presented that Conner needed to pursue the suspect or otherwise keep him under her control. She did not testify that she needed to follow him to complete the interview (which she did not resume when they reached the other side of the duplex). Therefore, credible evidence supports the Commission's finding that Conner left the porch "for the purpose of removing herself from the rain" after she had "ceased and suspended the work-related tasks." Because we are bound by these factual findings, we hold that the Commission did not err in determining that Conner failed to prove that her injuries arose out of her employment.

Furthermore, the Commission did not err in concluding that Conner's employment did not collaborate in causing her injuries. The record shows that Conner was not required to interview the subject outside on the porch while subject to the elements. Conner and her fellow officer *chose* to conduct the interview on the porch of the vacant part of the duplex – rather than in their patrol vehicle, which was sitting right there in front of the duplex. Consequently, when the storm came, they did not need to be on that porch and were subject to the same risk of slipping on wet grass while seeking shelter indoors as any other member of the general public. Furthermore, Code § 65.2-301.1 – which applies to injuries suffered by "public safety officers" when "weather constitutes a particular risk" of their employment "and where the public safety officer's injury arose out of and in the course of his employment" – does not render Conner's injuries compensable because, as the Commission found, she still failed to show that her injuries actually arose out of her employment.

Consequently, for all of these reasons, we affirm the decision of the Commission.

<u>Affirmed.</u>