COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges Humphreys and Huff
Argued at Alexandria, Virginia

PUBLISHED

CARY O'DONOGHUE

v.       Record No. 1149-18-4

UNITED CONTINENTAL HOLDINGS, INC. AND
 UNITED AIRLINES, INC.

OPINION BY
CHIEF JUDGE MARLA GRAFF DECKER
MARCH 26, 2019

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Kathleen Grace Walsh (Law Office of Kathleen Grace Walsh, on
brief), for appellant.

Jennifer R. Helsel (Ciara Wren Malone; Franklin & Prokopik, P.C.,
on brief), for appellees.

Cary O'Donoghue (the claimant) appeals a decision of the Virginia Workers'

Compensation Commission denying his claim for benefits for injuries he sustained while

working for United Continental Holdings, Inc., and United Airlines, Inc. (the employer).  He

argues that the Commission erred in concluding that he failed to prove that the accident and

resulting injuries arose "out of" his employment as required by Code § 65.2-101 for coverage

under the Virginia Workers' Compensation Act.  Based on the applicable law, we hold that the

record supports the Commission's ruling that the claimant did not prove that his injuries arose

out of his employment.  Consequently, we affirm the denial of benefits.

## I. BACKGROUND[1]

The claimant sought medical and disability compensation benefits through the Commission. His claim was based on electrocution injuries that he sustained while working for the employer at Dulles Airport on August 11, 2017. The employer defended the claim on the ground that the cause of the injuries was either unexplained or an act of God and, consequently, was not compensable under the Act.

The evidence presented at the hearing before the deputy commissioner established that the claimant sustained the injuries while working as a ramp serviceman whose duties included loading and unloading airplanes. Earlier on the day at issue, the outdoor ramp where he was working was temporarily closed due to thunderstorms in the area. The claimant testified that the employer's "operations" division had "some weather system they use[d]" to assess how close lightning was to the airport in order to determine when to close the ramps for safety reasons. When a determination to close the ramps was made, a representative of the employer would "drive around the whole terminal" in a truck, waving a flag and "blow[ing] an airhorn."

Later in the claimant's shift, the ramp on which he was working reopened, and a Boeing 787, one of United's newest airplanes, arrived at one of the gates. The claimant had previously received special training regarding that particular plane due to its construction. The airplane was half metal and half composite, with the "composite material along the aircraft's fuselage." The claimant knew that when a Boeing 787 arrives at the gate, unlike with other airplanes, "no [ground] power is put to the plane due to [its] on-board lithium batteries."

According to the claimant, when the plane arrived at the gate that night, storms were "in the area" with "lightning all around." Also, "[i]t was down-pouring raining," and about an inch

---

[1] On appeal from the Commission, we view the evidence in the light most favorable to the prevailing party before the Commission, in this case the employer. See Apple Constr. Corp. v. Sexton, 44 Va. App. 458, 460 (2004).

- 2 -

of rainwater was standing on the ground. In these conditions, the claimant positioned a three-step metal ladder in the standing water. He then climbed the ladder, opened an access panel on the plane, and reached for an interior toggle switch that operated the cargo door. He could see lightning in the distance while he did so. As the claimant touched the toggle switch, "a blue arc came out of the control panel." The arc "flash[ed]" "right in front of his face," and he "felt electricity" go "through his body." He did not see the blue flash along any other parts of the plane or its fuselage. The claimant told his supervisor and another employee that he had been struck by lightning, and he immediately sought medical treatment. The ramp was still open when he was injured, but it was closed again soon after his electrocution due to the weather conditions.

The medical records in evidence include various equivocal descriptions of the electrocution. They indicate that the claimant was "struck by lightning"; "was either directly struck by lightning[] or [impacted by] lightning that struck the plane as he was touching the cargo door"; or was "struck by lightning" or "[encountered] static electricity."

The deputy commissioner asked the claimant about static electricity, stating his understanding that "when an aircraft comes in, there are times . . . where it's accumulated static electricity . . . [i]n flight." He inquired whether the claimant knew how that electricity was discharged. The claimant agreed with the premise that a plane can accumulate static electricity in flight, and he explained that plugging the ground power cable into an aircraft "should dissipate any of the extra static." However, because ground power was routinely not hooked up to the Boeing 787, due to its on-board lithium batteries, the claimant said that he did not know how static electricity would dissipate from that type of plane. He further specifically stated that he "[did not] know" the source of the electrical arc that came out of the panel box and went through his body. The claimant noted that he was "not a science person" and that he was not sure if the

- 3 -

source of the arc was "static electricity" from "the ground," "the sky," or "the aircraft," or if it was a lightning strike.[2]

The deputy commissioner found that the claimant testified that he sustained his electrocution injuries "either as a result of a lightning strike" or, "alternatively, as the result of arching [sic] static electricity." He noted that under Virginia law, the mere occurrence of an injury due to a lightning strike while at work is insufficient to invoke the coverage of the Workers' Compensation Act and that a claimant must prove, additionally, that the conditions of the employment collaborated in causing the injury. The deputy commissioner further found that the claimant had not presented "persuasive evidence . . . that [he] was working at a location or performing a work related duty that created a special or peculiar risk of exposure to a lightning strike." Finally, he concluded that the evidence presented the possibility that the injuries could have resulted from a sudden discharge of static electricity from the plane arising out of the employment rather than from a lightning strike but that this theory was mere speculation on the evidence presented. Consequently, the deputy commissioner held that the claimant failed to prove the requisite causal connection between his employment and his injuries.

On the claimant's request for review, the Commission unanimously affirmed the denial of benefits. It found that the claimant's testimony constituted an admission that "he did not know whether [the blue arc] was lightning or an electrical problem with the airplane." The Commission reasoned that the injuries could have been due solely to "an act of God"—the lightning strike—without any collaboration from the employment. On these facts, it determined

---

[2] The testimony of United Airlines employee Lloyd Robinson, a certified aircraft repair technician, was ruled inadmissible in the Commission. Robinson's deposition is contained in the appendix, but the ruling excluding that testimony is not challenged on appeal. Consequently, we do not consider the deposition. See Denton v. Browntown Valley Assocs., Inc., 294 Va. 76, 84 (2017) (refusing on appeal to consider exhibits ruled inadmissible at trial where no error was assigned to that ruling).

that "[t]he evidence in the record does not sufficiently identify anything about the airplane or the circumstances of [the claimant's] employment that caused his injuries." Consequently, the Commission held that the claimant failed to prove that his injuries arose out of his employment, and it affirmed the deputy commissioner's denial of benefits.

## II. ANALYSIS

The claimant argues that the Commission erred by finding the evidence was insufficient to prove that his injuries arose out of his employment as required for entitlement to benefits under the Workers' Compensation Act.

### A. Standard of Review and Legal Framework

In assessing the Commission's determination regarding whether an injury arose "out of" one's employment, the appellate court faces a mixed question of law and fact. E.g., Va. Tree Harvesters, Inc. v. Shelton, 62 Va. App. 524, 532 (2013). The Court reviews the legal component of that determination *de novo*. See Turf Care, Inc. v. Henson, 51 Va. App. 318, 324 (2008). However, when the Commission makes factual findings based on credible evidence in the record and "'reasonable inferences'" drawn from that evidence, those findings are "conclusive and binding." Va. Tree Harvesters, 62 Va. App. at 532-33 (quoting Hawks v. Henrico Cty. Sch. Bd., 7 Va. App. 398, 404 (1988)).

Entitlement to benefits for an injury under the Act requires proof, by a preponderance of the evidence, of an "injury by accident arising out of and in the course of the employment." Code § 65.2-101; see Va. Tree Harvesters, 62 Va. App. at 533. "The phrase arising 'in the course of' refers to the time, place, and circumstances under which the accident occurred. The phrase arising 'out of' refers to the origin or cause of the injury." Va. Emp't Comm'n v. Hale, 43 Va. App. 379, 384 (2004) (quoting Cty. of Chesterfield v. Johnson, 237 Va. 180, 183 (1989)).

It is undisputed in this appeal that the claimant's injuries arose "in the course of" his employment. Only the "arising out of" prong is in dispute.

The "arising out of" prong of the statutory test is "to be liberally construed to carry out the humane and beneficent purpose of" the Act.[3] Lucas v. Lucas, 212 Va. 561, 562-63 (1972). Nevertheless, the appellate courts "cannot permit a liberal construction to change the meaning of the statutory language or the purpose of the Act." Am. Furniture Co. v. Doane, 230 Va. 39, 42 (1985); see Jeffreys v. Uninsured Employer's Fund, ___ Va. ___, ___ (Feb. 14, 2019) ("We frequently apply this simple principle [of liberally construing the Act] but guard against doing so simplistically." (footnote omitted)).

In defining the "arising out of" prong, Virginia uses "the 'actual risk test.'" Lucas v. Fed. Express Corp., 41 Va. App. 130, 134 (2003) (quoting Lucas, 212 Va. at 563). This test requires proof that "the employment expose[d] the work[er] to the particular danger from which he was injured, notwithstanding the exposure of the public generally to like risks." Id. (quoting Lucas, 212 Va. at 563). The requirement is met "only . . . 'if there is a causal connection between the claimant's injury and the conditions under which the employer requires the work to be performed." Va. Tree Harvesters, 62 Va. App. at 534 (quoting R.T. Invs. v. Johns, 228 Va. 249, 252-53 (1984)); see also Johnson, 237 Va. at 185 (noting that Virginia does not apply the more lenient "positional risk test," under which "simply being injured at work is sufficient to establish compensability").

---

[3] Additionally, the General Assembly has delineated certain circumstances that give rise to a rebuttable presumption that an injury or death arose out of the employment. See, e.g., Code § 65.2-105 (creating a statutory presumption where the injury by accident caused the employee's death or incapacity to testify); see also Pinkerton's, Inc. v. Helmes, 242 Va. 378, 380-81 (1991) (declining to expand the common law presumption applied in unexplained death cases). The claimant does not argue that a specific presumption applies here, and we agree that none are implicated by the facts of this case.

In Virginia, under the actual risk test, proof of an injury while at work from lightning or some other "natural force," standing alone, is considered "an act of God" and does not establish that the employee is entitled to coverage under the Act.[4]  Hale, 43 Va. App. at 385 (quoting Lucas, 41 Va. App. at 134-35).  However, when "some condition[] or environment" of the employment poses "a special or peculiar risk" from "the disastrous forces of nature," the injury is "compensa[ble] as a risk of the employment."  Id. (emphasis omitted) (quoting Lucas, 41 Va. App. at 135).

The test under the actual risk doctrine, therefore, is "whether [a condition of] the employment collaborated [with the act of God] in causing the injury."[5]  Id. (quoting Lucas, 41 Va. App. at 135).  "Hazards to which the general public is *equally* exposed are non-compensable."  Lucas, 41 Va. App. at 134 (emphasis added).  To recover, "an employee 'must prove that the employment activity . . . exposed [him or] her to the injurious risk to an extent to which [members of the general public] were not ordinarily exposed, and thus caused [the] injuries.'"  Hale, 43 Va. App. at 384-85 (quoting Lucas, 41 Va. App. at 134).  "[W]here 'the employment brings a greater exposure'" to the elements, such as lightning or extreme

---

[4] The General Assembly specifically addressed this requirement with respect to certain "weather" risks that impact "public safety officer[s]."  See Code § 65.2-301.1; 2013 Va. Acts chs. 174, 458.  This statute does not apply to the claimant's case.

[5] Although "Virginia indicates it follows the 'actual risk' doctrine," at least two legal commentators believe that the explanation of the doctrine given by Virginia courts in some of the state's case law is "much closer to the increased risk doctrine."  1 Lex K. Larson & Thomas A. Robinson, Larson's Workers' Compensation Law § 3.04, at 3-6 to 3-7 n.1 (Matthew Bender, rev. ed. 2018).  Those commentators opine that application of the "true" actual risk doctrine "permit[s] recoveries . . . in a much greater proportion of act-of-God cases," like those involving lightning, than does the increased risk doctrine.  Id. at 3-6.  They distinguish the two doctrines by stating that the true increased risk doctrine in lightning cases requires proof that the job increased the employee's "risk of exposure to lightning by placing claimant on a height, or near metal, or in contact with an element that conducts electricity," whereas the true actual risk doctrine does not "insist[] upon" such factors causing an increased risk "as long as the employment subjected claimant to the actual risk that caused the injury."  Id. §§ 3.03 to 3.04, at 3-5 to 3-6.  As a panel of this Court, we are bound by the principles established by Virginia's appellate courts.

temperatures, "'and injury results,' the injury does arise out of the employment." Scott Cty. Sch. Bd. v. Carter, 156 Va. 815, 820 (1931) (quoting 28 Ruling Case Law § 94, at 806-07 (William M. McKinney & Burdett A. Rich eds., 1921)).

Finally, due to the allocation of the burden of proof, when an employee seeks coverage for injuries that "may have resulted from one of two causes" and only one of those causes is compensable under the Act, "the [claim] must fail if [the] evidence does not show that the damage was produced by the [compensable] cause." See A. N. Campbell & Co. v. Messenger, 171 Va. 374, 377, 379 (1938) (quoting Norfolk & W. Ry. v. Poole's Adm'r, 100 Va. 148, 153-54 (1902)) (decided under the same "arising out of" language in an earlier version of the Act); see also Clifton v. Clifton Cable Contracting, L.L.C., 54 Va. App. 532, 538-40, 543 (2009) (holding under Code § 65.2-101 that where an employee's death could have resulted from "multiple possib[le]" causes, only "[s]ome of [which might] have been compensable," and no presumption of compensability applied, the claimant failed to prove an entitlement to benefits).

It is in light of these guiding legal principles that the Court considers the assignment of error.

### B.  Application of the Law to the Facts of this Case

The claimant argues that the Commission erroneously concluded that the evidence did not sufficiently identify anything about the airplane or the circumstances of the employment that collaborated with the act of God to cause his injuries.  He points to the evidence establishing that, as he put his finger on the plane's toggle switch, he saw a blue arc come out of the plane's panel box and felt it course through his body.  He asserts that he should not have had to hire an "aeronautics expert" to prove an aircraft malfunction and contends that the evidence he produced was adequate to establish that his injuries arose out of his employment.  Additionally, he argues that even if lightning caused his injuries, the requirements of his employment that "he work

outside in an exposed area during storms" and "use a metal step ladder" "situate[d] . . . in a pool of one inch [of] water" in fact "create[d] a special and peculiar risk of exposure to lightning."

At first glance, one might think that the claimant met his burden under the actual risk test. However, application of the case law to the factual findings of the Commission refutes such a conclusion. Although possible causes of electrocution in this case other than lightning, such as a discharge of static electricity from the airplane or an electrical malfunction, would constitute compensable actual risks of the claimant's employment, the appellant did not exclude lightning as a possible cause of his injuries. Critically, on this record, Virginia's controlling case law specifically involving lightning strikes compels us to hold that the Commission did not err in refusing to award benefits.[6]

In Lucas v. Federal Express Corp., 41 Va. App. 130, a delivery driver sustained injuries from a lightning strike while inside her truck. Id. at 134. The employee presented evidence of the truck's "electrical and structural characteristics" and testified that it was "essentially all metal." Id. at 136. At the time of the lightning strike, she had one hand on the metal part of the steering wheel and was using her other hand to place the key into the truck's ignition. Id. at 132. On this evidence, the Commission denied the claim for benefits. Id. at 133.

This Court applied the actual risk test to affirm the Commission. Id. at 134-36. The Court reasoned that while the employee "provided testimony of the truck's electrical and

---

[6] We analyze this case based upon the claimant's failure to prove that injuries caused by lightning, one of *multiple* possible causes of his injuries, arose out of his employment. See A.N. Campbell, 171 Va. at 377, 379; Clifton, 54 Va. App. at 538-40, 543. The Commission may have based its denial of benefits in part on the claimant's failure under Lysable Transport, Inc. v. Patton, 57 Va. App. 408 (2010), to prove a *single* compensable cause of "'how the accident happened,'" leaving the precise cause "speculative." See id. at 419 (quoting Pinkerton's, 242 Va. at 381). Because we hold that the evidence supports a finding that one of multiple possible causes was non-compensable, we do not consider the impact of Lysable in this case. See Orthopaedic & Spine Ctr. v. Muller Martini Mfg. Corp., 61 Va. App. 482, 490 n.6 (2013) ("[A]n appellate court decides cases 'on the best and narrowest ground available.'" (quoting Luginbyhl v. Commonwealth, 48 Va. App. 58, 64 (2006) (*en banc*))).

structural characteristics," the record contained "no competent evidence relating how these characteristics . . . expos[ed] her to a particular risk of injury from lightning not otherwise experienced by any other person in the same vicinity." Id. at 136. It also noted her testimony that "she did not expect bad weather that day" and conditions "suddenly and unexpectedly changed" prior to the lightning strike. Id. at 132 n.2. On these facts, the Court concluded that credible evidence supported the Commission's determination that it could not find that the injuries arose out of the employment. Id. at 136.

In Virginia Employment Commission v. Hale, 43 Va. App. 379, the Court applied Lucas v. Federal Express Corp. to reverse an award of benefits for injuries sustained due to a lightning strike that injured an employee inside a building. Id. at 381, 385-87. Hale was struck by lightning while staffing her employer's switchboard. Id. at 381-82, 384. The Commission held that Hale's injuries arose out of her employment because "her use of the employer's switchboard equipment during a thunderstorm" brought about "a special or peculiar risk of electrical shock through a lightning strike," a risk that the deputy commissioner had found was "greater . . . than anyone else['s risk]." Id. at 383-84.

On review in this Court, the Hale panel majority held that the evidence did not support the award of benefits. Id. at 387-88. In doing so, it distinguished the holding in Scott County School Board v. Carter, 156 Va. 815. Hale, 43 Va. App. at 386. It noted that in Carter, the Supreme Court of Virginia affirmed an award of benefits made upon the death of a teacher who was killed when a cyclone destroyed the schoolhouse in which she was working. Id. The Hale majority recognized that in Carter, the Supreme Court gave deference to the Commission's finding regarding the increased susceptibility of the schoolhouse to storms based on its location "on an eminence on a plateau, at a point where the wind blew more continually than at other points." Id. (quoting Lucas, 41 Va. App. at 135 (quoting Carter, 156 Va. at 817)). The Hale

majority distinguished Carter, reasoning that although "the [C]ommission expressly articulated a connection between the conditions of [Hale's] employment and an increased risk of being struck by lightning, no evidence in the [Hale] record supports [that] conclusion." Id. More specifically, it noted an absence of "evidence suggest[ing that Hale's] use of the computer or telephone created a 'heightened risk of injury' beyond the general risk to anyone in a building during a storm." Id.

Taking into consideration the Commission's specific factual findings, the outcome in the instant case is controlled by the holdings in Lucas v. Federal Express Corp. and Virginia Employment Commission v. Hale, both of which involved injuries caused by lightning strikes. Here, like in Lucas, the claimant presented evidence concerning the nature of his employment environment and its "electrical and structural characteristics." See Lucas, 41 Va. App. at 136. In both Lucas and the instant case, the claimant was injured while in physical contact with various structures in that environment, but "no competent evidence relat[ed] how the[ environment's] characteristics" or any other conditions of the employment, such as working outdoors with storms in the distance and while standing on a metal ladder in an inch of water, "expos[ed] [him] to a particular risk of injury from lightning not otherwise experienced by any other person in the same vicinity."[7] See id. Although a person in the same general vicinity who was not working

_____

[7] The claimant suggests that the evidence of these specific duties—that "he work outside in an exposed area during storms" on a "metal step ladder" "situate[d] . . . in a pool of . . . water"—establishes that his job exposed him to "a special and peculiar risk" of being struck by lightning. The Commission, however, declined to draw this factual inference from the evidence, and we hold that its decision was not plainly wrong as a matter of law. Compare Hale, 43 Va. App. 387-88 (holding that absent the presentation of *evidence* that the claimant's working conditions exposed her to "a special or peculiar risk of electrical shock through a lightning strike," the record did not support the Commission's ruling), with id. at 388-89 (Elder, J., dissenting) (advocating for allowing the Commission to take judicial notice of certain commonly known facts about the operation of lightning). See generally Va. R. Evid. 2:201(a) ("A court may take judicial notice of a factual matter not subject to reasonable dispute in that it is either (1) common knowledge or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

- 11 -

for the employer might have chosen to go indoors due to the dangers associated with the lightning visible in the distance, the evidence did not compel the Commission to find as a matter of law that a nonemployee in the area would likely have done so.[8]  Absent such evidence, the record supports the Commission's factual findings and its decision to deny benefits.

The holding in Hale, in which the Court reversed the Commission's award of benefits for a lightning strike, further supports the conclusion that the Commission, in the instant case, did not err by finding that a causal connection between the claimant's employment and the lightning strike was speculative.  See 43 Va. App. at 381.  In Hale, the claimant heard a loud noise on the phone she was using, saw a large streak of light come down right beside her work station at the switchboard, and immediately felt tingling in her extremities.  Id. at 382.  Here, the claimant saw a flash of light come from the plane's control panel and felt a shock of electricity run from his finger on the plane's toggle switch through his body and down his leg.  Thus, like in Hale, the mere fact that the flash of light appeared connected to the employer's equipment in some fashion, without more, did not prove that the employment collaborated with the lightning strike to cause the injuries.

---

[8] Commentators have opined that determining who comprises "the general public with which comparison is to be made" involves "ask[ing]:  What does the average person . . . do when it is twenty below, or a hundred in the shade, or raining, sleeting, or snowing violently?"  1 Larson & Robinson, supra note 5, § 5.04[2], at 5-18.  They reason that the analysis should be based on the theory that the general public "does not stay outdoors all day" under such conditions.  Id.  Consequently, when an employee is injured by a weather event that the Commission finds the general public would likely have taken steps to avoid and the evidence supports that finding, the employee is entitled to benefits.  See id. § 5.04[3], at 5-21 to 5-22 (recognizing recovery for "heat prostration" under the actual risk test).  Here, like in Lucas, 41 Va. App. at 132-33, 135, the Commission did not make such a finding.  Similarly, in Hale, although the Commission found that the employee's use of her employer's computer and phone during a storm collaborated in causing her injury from lightning, this Court held that no evidence in the record supported a finding that she was at a greater risk than any other person "in a building during a storm."  43 Va. App. at 386-87.

Under the established precedent of Lucas and Hale, the Commission was entitled to conclude, as it did, that absent *specific* evidence regarding the risks associated with the claimant's assigned duties, it could not assess whether being injured by a lightning strike was an actual risk of the conditions of the claimant's employment.[9]

The claimant asserts in the alternative that his electrocution could not have resulted from lightning because "all the evidence is that the [airport] ramp is closed when light[ning] is a certain distance from the ramp." Consequently, he argues that he proved that his employment was the only cause of his injuries rather than merely a collaborating factor.

This argument fails because it does not characterize the facts in the light most favorable to the employer, the party who prevailed below. See, e.g., Snellings v. Stafford Cty. Fire & Rescue Dep't, 62 Va. App. 568, 570 (2013).

First, the claimant himself said that he was struck by lightning, although he later expressed uncertainty regarding the source of his injuries. See Olsten of Richmond v. Leftwich, 230 Va. 317, 320-21 (1985) (noting that a litigant generally cannot rise above his own testimony but explaining that where the testimony is equivocal, the fact finder is permitted to assess it in its entirety).

---

[9] The Commission, as the finder of fact, bore the burden of determining whether the claimant proved a compensable cause of his injuries by a preponderance of the evidence. See Va. Tree Harvesters, 62 Va. App. at 532-33. The Commission might permissibly have considered the employer's safety rule, which requires employees to seek shelter when notified of lightning nearby, as evidence that lightning was an actual risk of the claimant's employment. See Southland Corp. v. Gray, 18 Va. App. 366, 367-68 (1994) (affirming the Commission's award of benefits for injuries sustained during an early evening robbery, based in part on evidence of the employer's safety rule prohibiting employees from taking deposits to the bank after 3:00 p.m. without special permission). Nevertheless, a lightning warning was not in effect when the claimant was injured, and the Commission did not opt to rely on the existence of the safety rule as evidence supporting a finding that the claimant met his burden of proof. Under the applicable standard of review, the Commission's conclusion that the evidence as a whole did not preponderate to prove that a lightning strike, if the cause of the claimant's injuries, was an actual risk arising out of the employment was not error as a matter of law.

Second, the evidence to which the claimant refers, involving how the airline's lightning detection system functioned, was vague and does not compel the conclusion that he could not have been struck by lightning. The claimant testified that "operations" had "some weather system they use[d]" to assess how close lightning was to the airport to determine when it needed to shut down the ramps for safety reasons. He further related that when the determination was made to close the ramps, the airline's staff would "drive around" the terminal "with a flag and blow an airhorn." Finally, he said that soon *after* his injury, the ramp on which he had been working was again closed due to the weather. The record contains no additional evidence regarding how the "weather system" at issue operated.

The Commission was entitled to draw reasonable inferences from the evidence regarding the weather alert system. Under the applicable standard of review, we do not disturb "inferences drawn . . . from the facts proven" as long as they are reasonable. Turf Care, 51 Va. App. at 324. One reasonable inference from the evidence about how the weather alert system operated is that the claimant could have been hit by an initial lightning strike that was then detected by the system, triggering the ramp closure that occurred soon after the claimant was hit. Additionally, the record does not indicate how long it took "operations" to mobilize an alert to lightning in the area using its truck with the flag and airhorn. Thus, the system that the claimant described might have detected lightning in the area, and the claimant might still have been struck by lightning after the detection but before notification of the alert reached the ramp on which the claimant was working.

Consequently, the evidence in the record does not disprove as a matter of law the theory that the claimant was injured by a lightning strike rather than by an electrocution wholly unrelated to lightning.

III. CONCLUSION

Under controlling case precedent, the record before us on appeal supports the Commission's conclusion that the claimant did not prove that his injuries arose out of his employment. Consequently, we affirm the denial of benefits.

Affirmed.

Huff, J., dissenting,

I respectfully dissent. The Commission erred as a matter of law when it reasoned that claimant could not prove he suffered an injury by accident "arising out of his employment" when the cause of his electrocution "remained speculative." Based on that reasoning the Commission concluded that the evidence was insufficient to show that claimant's employment exposed him to a particular danger or risk. Despite employer's claim to the contrary, the determination that claimant has failed to meet his burden of proof is not a factual finding of the Commission to which this Court must defer. The Commission's analysis ignored claimant's assertion that a lightning strike injury might have arisen out of his employment and denied benefits without consideration of that event. Because the Commission applied an incorrect legal test to claimant's evidence, I would remand this case to the full Commission for rehearing with instructions that the claimant need not prove the exact mechanism of his electrocution in order to recover. Claimant need only prove that each of the possible mechanisms (lightning strike, static discharge, or other fault with the aircraft) satisfies the actual risk test for "arising out of" his employment.

## A. Multiple Mechanisms of Injury

I believe the root of the Commission's error in this case lies in a blurring of the line between "causation" of claimant's *injuries* and the existence of a "causal relationship" between the *accident* and claimant's *employment*. The cause of claimant's injuries is a finding of fact, for which this Court grants the Commission great deference. There is no dispute of fact as to the cause of claimant's injuries in this case. Claimant's host of medical problems, from pain and swelling in his arm to blurred vision, headaches, stuttering, and post-traumatic stress disorder were all caused by his electrocution, which occurred on August 11, 2017, when he touched a

jetliner that had just landed. No contradictory medical evidence was offered.[10] The only disputed point in this case is whether claimant's injuries "arose out of" his employment. This question requires claimant to demonstrate a causal relationship between his accident (in this case, his electrocution) and the conditions of his employment. Cent. State Hosp. v. Wiggers, 230 Va. 157, 159 (1985) (quoting Richmond Mem. Hosp. v. Crane, 222 Va. 283, 285 (1981)). It is a mixed question of law and fact, subject to *de novo* review. Nurses 4 You, Inc. v. Ferris, 49 Va. App. 332, 339 (2007).

The facts of claimant's accident are undisputed. Employer asserts that claimant has advanced alternative theories about the mechanism causing the electrical arc that was emitted from the control panel for the cargo door and claims that this uncertainty makes it impossible for claimant to prove the causal relationship between his electrocution and his employment in satisfaction of Virginia's "actual risk test." The Commission agreed. I do not, and I do not agree that this is a decision to which we must defer.

When the evidence is undisputed, "the question of the sufficiency thereof is one of law." McKellar v. Northrop Grumman Shipbuilding, Inc., 290 Va. 349, 354 (2015) (quoting VEPCO v. Kremposky, 227 Va. 265, 269 (1984)). See also Bernard v. Carlson Companies-TGIF, 60 Va. App. 400, 412-13 (2012) ("When we are presented with 'essentially undisputed facts,' as we are here, a *de novo* standard of appellate review governs the question whether the injury satisfies the 'actual risk' test." (quoting Hilton v. Martin, 275 Va. 176, 180 (2008))). To the extent there

---

[10] Although the medical histories in the record contain various equivocal descriptions of the electrocution, these inconsistencies do not impact the analysis of whether the electrocution "arose out of" claimant's employment. The Commission and this Court rely on medical evidence to establish a causal relationship between the claimant's diagnosed medical conditions and the accident at work. Herbert Clements & Sons, Inc. v. Harris, 52 Va. App. 447, 456 (2008). For example, if an employee were burned in a boiler explosion, the Commission would rely on medical evidence to determine that the burns were caused by the explosion. The Commission would generally not expect the doctor to opine on how the explosion occurred, and in this case a doctor's opinion about exactly how claimant was electrocuted is not helpful to the analysis.

is any dispute in the evidence in this case, it is only regarding the source of the electrical arc which passed through claimant's body. On this question, the Commission made no fact-finding to which this Court must defer. More to the point, it was an error of law for the Commission to analyze this case with the belief that it needed to make such a finding in order to resolve the question of whether claimant's injury by accident arose out of his employment.

My colleagues are correct that an employee's claim must fail if he or she seeks coverage for injuries that may have arisen from multiple mechanisms and only one of those mechanisms satisfies the actual risk test. This syllogism is enshrined in our jurisprudence in such cases as Clifton v. Clifton Cable Contracting, L.L.C., 54 Va. App. 532, 538-40 (2009), and the other cases cited in the majority opinion. There is a logical corollary to that syllogism which is equally valid: If an employee seeks coverage for injuries that must have arisen from one of multiple mechanisms, and each of those mechanisms would satisfy the actual risk test, then the injury must satisfy the actual risk test and is thus compensable. It would be illogical to interpret case law in a manner that ignores this corollary. This Court should not adopt such an illogical interpretation, especially since it would lead to results that violate our long-standing principle that "the words ['arising out of'] are to be liberally construed to carry out the humane and beneficent purpose of the Work[ers'] Compensation Act." Lucas v. Lucas, 212 Va. 561, 562-63 (1972). See Broadnax v. Commonwealth, 24 Va. App. 808, 815 (1997) (declining to interpret a statute in a way that would "render the statute strained, ambiguous, illogical, and in contravention of the legislature's clear intent"). The Commission erred by jumping to the conclusion that claimant could not prevail if the exact cause of the electrocution "remained speculative," by failing to recognize that he could prevail if each of the possible causes would

satisfy the "actual risk test," and by failing to analyze if a lightning strike would satisfy the actual risk test in this case.[11]

The entirety of the Commission's legal reasoning is contained in two paragraphs, and contains two key errors of law. The Commission reasoned as follows:

> The claimant's testimony that he observed a blue arc emerge from the control panel as he touched the toggle switch is not sufficient to show his employment exposed him to a particular danger or risk. He admitted that he did not know whether it was lightning or an electrical problem with the airplane. At his deposition, he suggested that the airplane discharged static electricity. The evidence in the record does not sufficiently identify anything about the airplane or the circumstances of his employment that caused his injuries.

The first error is holding that the evidence "does not sufficiently identify anything about the airplane . . . that caused his injuries." Claimant does not need to identify anything about the airplane that caused his injuries, only that his employment subjected him "to the particular danger that brought about his or her injury." Lipsey v. Case, 248 Va. 59, 61 (1994). He need not prove a defect in the aircraft or anything about the aircraft in particular because an employer's "liability is not based upon tort or other wrongful conduct on the employer's part, but because it is *incident to the relationship of employer-employee* and a part of employer's contractual liability under" the Worker's Compensation Act. Fauver v. Bell, 192 Va. 518, 523 (1951) (emphasis added).

An injury by accident arises out of employment "when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between *the conditions under which the work is required to be performed and the resulting injury*." Cent. State Hosp.,

---

[11] I disagree with my colleagues' assertion that the Commission "was entitled to conclude, *as it did*, that . . . it could not assess whether being injured by a lightning strike was an actual risk of the conditions of the claimant's employment." Supra at 13. The Commission's opinion reflects no conclusion about whether a lightning strike would, under the facts of this case, satisfy the "actual risk test" for an accident "arising out of" claimant's employment.

- 19 -

230 Va. at 159 (emphasis added). The record is replete with evidence of the causal connection between the conditions under which claimant's work was required to be performed and the resulting electrocution. Claimant testified, and employer did not dispute, that at the time of the accident, his duties required that he open the cargo door of a recently-landed jetliner, outside, in the pouring rain, standing on a metal ladder in a puddle of water, with lightning flashing all around him. That was his job, and he was expected to do it until the employer deemed that it was too dangerous and ordered him to seek shelter. There was no testimony that electrocution was a normal or expected part of the process of opening the door, or that claimant's electrocution resulted from his violation of any safety rule or procedure. He was doing his job, as his employer required him to do, and was electrocuted when he touched the cargo door switch. The danger of being electrocuted while opening the cargo door of a recently-landed jetliner during a torrential rainstorm clearly is a "danger . . . peculiar to the work," and "incidental to the character of the business . . . not independent of the relation of master and servant." Id. Whether the electrocution was caused by an untimely lightning strike, static discharge, or a fault in the aircraft, claimant would have had no reason to touch the cargo door switch at that time, under those conditions, were he not required to by his employer.

The Commission's most significant error was requiring the claimant to prove exactly how the electrical arc was generated in order to prove his electrocution arose out of his employment. In the paragraph explaining its only basis for reaching its conclusion, the Commission stated as follows:

> A claimant cannot meet his burden of proof where the cause of the accident "remains speculative." Pinkerton's, Inc. v. Helmes, 242 Va. 378, 380 (1991). Under the actual risk test, "facts must exist to explain how the accident occurred," Hill v. Southern Tank Transport, Inc., 44 Va. App. 725, 732-33 (2005), and "if the evidence does not prove by a preponderance 'how the accident happened,' it is by definition unexplained and thus speculative." Lysable Transport, Inc., v. Patton, 57 Va. App. 408, 419 (2010)

> (quoting Helmes, 242 Va. at 381).  Accordingly, we find the
> claimant failed to establish that he suffered a compensable injury
> by accident on August 11, 2017.

This paragraph misstates the actual risk test.  The actual risk test requires only that a claimant show that "the employment subject the employee to the particular danger that brought about his or her injury."  Lipsey, 248 Va. at 61.  Despite the rather confusing history of case law on this subject in the Commonwealth, one concept remains constant:  When analyzing whether an injury by accident "arose out of the employment" "[t]he key focus is not the relationship between the injury and its cause but rather the *relationship between the injury and the employment*."  Liberty Mut. Ins. Corp. v. Herndon, 59 Va. App. 544, 560 (2012) (emphasis added).  In this case, the Commission erred by mistakenly applying rules dealing with "speculative causes" that should have been confined to their unique facts.  With the exception of a small sub-set of vehicle accidents, a claimant can establish the relationship between his injuries and his employment without proving the exact cause of his accident.

The Commission's error is clearly demonstrated by looking more closely at the entire sentence quoted from Hill.  The Commission stated in its "conclusions of law" that "[u]nder the actual risk test, 'facts must exist to explain how the accident occurred,' Hill v. Southern Tank Transport, Inc., 44 Va. App. 725, 732-33 (2005)."  The Commission's abridgement alters the rule in a legally significant way.  A more complete quote from Hill is "*under the 'actual street risk rule,'* facts must exist to explain how the accident occurred. Without such an explanation, claimant cannot prove the second prong of the Sentara Leigh[ Hospital v. Nichols, 13 Va. App. 630 (1992),] test, i.e., that the injury arose from an actual risk of claimant's presence on the street."  Hill, 44 Va. App. at 732-33 (emphasis added).  This more complete citation of the relevant rule shows that in Hill, (and in Helmes, and Lysable Transport) this Court required claimants to prove "how the accident occurred" only to satisfy the second prong of the "actual

- 21 -

street risk rule," a unique test which applies only to *vehicle* accidents.[12] Applying the "actual street risk rule" outside of that context improperly distorts the application of the actual risk test.

In this case, the "actual street risk" doctrine does not apply. Claimant explained the exact circumstances of his accident in detail, and those details are undisputed. Accordingly, the Commission erred by applying unique rules relevant only to vehicle accidents. Claimant need not prove exactly "how the accident occurred," he must only show "that the employment expose[d] [him] to the particular danger from which he was injured, notwithstanding the exposure of the public generally to like risks." Lucas v. Lucas, 212 Va. 561, 563 (1972).

Even if there are alternate possible mechanisms of claimant's electrocution, he need not prove exactly which one actually occurred as long as he can prove that each of the possible mechanisms satisfies the actual risk test for "arising out of" his employment. To ignore this line of reasoning is an error of logic, and it is "incumbent upon a court to avoid reaching an illogical result." Lawson v. Doe, 239 Va. 477, 482 (1990). While my colleagues are correct to point out that claimant's evidence does not necessarily dictate a decision in favor of claimant, I find error in the Commission's conclusion of law that claimant cannot meet his burden of proof if the cause of the electrical arc "remains speculative," and further error in the Commission's failure to even consider claimant's argument that his electrocution would have arisen out of his employment if it was caused by lightning. I believe the Commission's opinion shows that it took an analytical shortcut based in erroneous legal reasoning, and its decision is not based on any fact-finding to which this Court owes deference. Accordingly, I would remand this case to the Commission for

---

[12] Another relevant factual similarity between Hill, Lysable Transport, and Helmes is that in each of those cases the claimant suffered memory loss and provided no testimony of their own regarding the circumstances of the accident. In this case claimant suffered no memory loss and testified extensively about the circumstances of the accident, testimony which was unrebutted by employer.

further analysis applying the proper legal framework of the actual risk test to each of the possible mechanisms of his electrocution.

## B. Lightning Strike

Although I believe the Commission's error of law provides sufficient grounds to remand this case for further analysis, since my colleagues discussed the question of whether a lightning strike would be compensable on these facts, I will briefly provide my own analysis on that point.

While I agree that the rules from Virginia Employment Comm'n/Commonwealth v. Hale, 43 Va. App. 379 (2004), and Lucas v. Federal Express Corp., 41 Va. App 130 (2003), apply to this case, I believe those rules lead to a different outcome because this case is so factually distinct. I agree that not all lightning strikes that occur on the job or at the claimant's place of business automatically "arise out of" employment. "The applicable test seems to be not whether the injury was caused by an act of God, *but whether the employment collaborated in causing the injury or death*." Lucas, 41 Va. App at 135 (emphasis added) (quoting Elmer H. Blair, Reference Guide to Workmen's Compensation § 9.02 (1974)).

I am not convinced that Lucas and Hale require some testimony about a unique characteristic of the aircraft that created the risk of a lightning strike in order to show that such an event would "arise out of" claimant's employment as an airline ramp worker. Such an interpretation of those cases ignores the unique conditions of employment faced by such a worker, conditions which are more than adequately established by claimant's undisputed testimony. In both Lucas and Hale, the claimants, although on duty, were engaged in activities which were a part of everyday life. The claimant in Lucas was driving a vehicle on a public way; the claimant in Hale was talking on the telephone in an office building. Each of them was subject to the same risk of lightning strike as any other member of the general public driving on the street, or talking on the telephone in the building. Neither of them could show any "special

or peculiar risk" of lightning strike "not generally experienced by other people," <u>Hale</u>, 43 Va. App. at 387, and attributable to "the nature of the employment, or some condition, or environment therein," <u>Lucas</u>, 41 Va. App. at 136. In this case, claimant's duties required him to engage in activity that was fundamentally different from everyday life. Unlike driving on a public highway or talking on the phone, the general public does not routinely open the cargo hatches of recently-landed jetliners in the middle of a thunderstorm.

In this case claimant provided ample evidence that he was working in a highly exposed area—the wide-open spaces of the airport ramp, in a thunderstorm, with lightning visible all around him. He was required to do so as a condition of his employment, and was expected to do so until his employer determined the risk of a lightning strike was too great. He testified to the existence of employer's system for evaluating lightning risk, and to the fact that employer imposes a rule[13] that when the lightning risk reaches a certain point, employer directs its employees to leave the ramp area for their own safety. Unlike the truck driver in <u>Lucas</u>, who was unable to show how the unique characteristics of her truck exposed her to a risk of lightning strike not shared by the driver of any other vehicle, <u>Lucas</u>, 41 Va. App. at 134, here it was not necessary for claimant to prove exactly what characteristic of the airplane exposed him to a unique risk of lightning strike, because being on the ramp, and touching the airplane, in the middle of a thunderstorm with visible lightning, are the precise conditions of his employment that exposed claimant to the particular danger of being struck by lightning in a manner to which

---

[13] As my colleagues correctly point out, when an employer establishes a safety rule to protect its employees from a particular risk, the existence of the rule is evidence that the risk is unusual and not one to which the general public is exposed. <u>See</u> <u>Southland Corp. v. Gray</u>, 18 Va. App. 366, 368 (1994) (explaining that an employer's rule prohibiting employees from taking deposits to the bank after 3:00 p.m. is evidence that there was a particular risk of employees being robbed while carrying the deposits, and affirming an award of benefits for an injury sustained in a robbery).

the general public is not equally exposed. As such, his "employment collaborated in causing [his] injury" by lightning strike. Id. at 135.

Even "where a claimant encounters a causative danger that the public might also be exposed to and is injured as a result, the claimant can recover so long as he encountered the danger as a part of his work responsibilities." Liberty Mut. Ins. Corp. v. Herndon, 59 Va. App. 544, 559 (2012). The "general public" in and around an airport is free to take shelter from thunderstorms, and may do so or not, of their own volition. The employees of the airlines, however, are required to be out and about on the ramp as a part of their duties. They are expected to continue to work, even when storms are in the area, unless the ramp is closed according to the employer's safety rule.

Accordingly, I believe that the evidence in the record of this case would support a conclusion that a lightning strike would satisfy the actual risk test. Furthermore, I think it would be an incorrect application of this Court's precedent in Hale and Lucas to require testimony about some unique characteristic of the aircraft in order to prove that a lightning strike would be an accident arising out of claimant's employment in this case. Finally, it was error for the full Commission to not even consider this question.