COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Athey and Senior Judge Haley
Argued at Fredericksburg, Virginia

UNPUBLISHED

DIXIE CONSTRUCTION CO. INC. AND
  HARTFORD UNDERWRITERS INS. CO.
                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1656-19-4                     JUDGE JAMES W. HALEY, JR.
                                                          MARCH 17, 2020
TIMOTHY STOKES


                FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

             Joseph F. Giordano (Semmes, Bowen & Semmes, P.C., on brief), for
             appellants.

             Joseph F. Curran (C. Michelle Buelow; Parthemos & Curran, PLLC,
             on brief), for appellee.


        Dixie Construction Co. Inc. and Hartford Underwriters Ins. Co., (hereinafter

"employer"), appeal a decision of the Workers' Compensation Commission (the Commission)

awarding Timothy Stokes temporary total disability and medical benefits for an injury to his

right knee.  Employer argues that the Commission erred in holding that Stokes proved a

compensable injury by accident arising out of his employment "because his task did not require

him to work in an unusual and awkward position."  Employer also contends that the Commission

erred in holding that Stokes was entitled to benefits beginning on December 23, 2018 and

continuing "because he did not adequately market his residual [work] capacity."  For the reasons

that follow, we affirm the Commission's decision.

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

"On appeal from a decision of the Workers' Compensation Commission, the evidence and all reasonable inferences that may be drawn from that evidence are viewed in the light most favorable to the prevailing party below." Anderson v. Anderson, 65 Va. App. 354, 361 (2015) (quoting Artis v. Ottenberg's Bakers, Inc., 45 Va. App. 72, 83 (2005) (*en banc*)).

Stokes, who was nineteen years old at the time of the incident, worked for employer as a construction laborer. On December 4, 2018, Stokes and another employee were "chip[ping] out grade" so a sidewalk crew could pour concrete. Stokes stated that the area where he was working had two-by-four boards placed as "rails" along the sides of the sidewalk. They also had a plywood template or grade board that they moved to check the grade level before pouring the concrete. At the hearing before the deputy commissioner, Stokes described his activity as follows:

> We had a shovel and we were chipping out the compacted gravel to get it on grade and check it with the grade board. As we did that, we were kicking and kneeing the grade board forward repeatedly. We were up and down just repeating the process and when I stood up to go kick the grade board, my knee had popped.

Stokes estimated that he had been chipping the gravel, and kneeing and kicking the grade board for about thirty to forty-five minutes before his knee popped. He stated that the last time he "went to kick the board," his knee popped. In his deposition, Stokes agreed that he repeatedly stood and kneeled down, and after doing this for a period of time, he stood, and his knee "popped and blocked." Stokes was holding a shovel when his knee popped. Stokes stated that his co-worker noticed that he was "limping around," and Stokes immediately reported his injury to his supervisor.

Mike Jennings, a grade foreman and Stokes's supervisor, testified at the hearing before the deputy commissioner that he told Stokes to dig out the turndowns on the edge of the

sidewalk.  He stated that Stokes chipped out compacted gravel while on his knees and stood to kick the template forward.  Occasionally, Stokes moved the template forward with his knees.  Jennings realized Stokes was injured when he stood and said that "his knee had popped."  Jennings had not noticed that Stokes had any knee problems before the incident.

On December 6, 2018, Stokes reported a right knee injury at Concentra.  Under the heading "History of Present Illness," a Concentra record states, "On 12/4/2018 grading dirt outside (requires employee to squat), employee states a 'pop' to R knee with standing.  Able to finish shift.  Rested knee at home for past 1.5 days.  C/o tenderness, pain 7/10, sharp/dull.  Pain with walking flexion and extension."  Stokes was diagnosed with a sprained knee and referred to Dr. Michael Kavanagh, of Leesburg Orthopedics, for evaluation and treatment.  Stokes was also referred to physical therapy and "return[ed] to modified work/activity" with no squatting or kneeling.  A record from a physical therapy evaluation documented that Stokes stated that he injured his right knee "when he squatted in a tall kneel at work (with his L knee kneeling on the ground and R knee bent at 90 deg) and felt a 'pop' when he stood up."

Dr. Kavanagh diagnosed Stokes with a torn medial meniscus and performed arthroscopic surgery on April 10, 2019.  He released Stokes to modified duty.  Dr. Kavanagh also completed a medical questionnaire in which he opined that Stokes's right knee injury and his treatment thereof was causally related to the work accident Stokes described.

Stokes is a high school graduate with no formal vocational training.  He has worked for two construction companies since completing high school.  At the hearing, he produced records showing that he had looked for a job using the job search engine "Indeed."  He also created a resume. Stokes testified that he looked for jobs that he "knew how to do that [he] could do without using [his] leg; like operating heavy equipment."  He also talked with local people he knew who "would give [him] an operating job," such as operating Bobcats or skid skeers.

- 3 -

Stokes submitted an eight-page Job Search Record showing approximately seventy-three contacts he had made in his job search from December 23, 2018 through May 6, 2019.

Following the hearing, the deputy commissioner issued an opinion finding that Stokes proved that he had sustained a compensable injury by accident arising out of and in the course of his employment. The deputy commissioner found Stokes to be a "candid and credible witness" and "credited" his testimony that he had been engaged in work for thirty to forty-five minutes, repeatedly kneeling and standing and using his feet and knees "to strike a board or template" used to level the grade of an area. He also accepted Stokes's testimony that while engaged in the described activity, he stood up from kneeling and felt a pop in his right knee "at a specific and distinct time." The deputy commissioner concluded that the medical records corroborated Stokes's testimony. The deputy commissioner entered an award of temporary total disability and medical benefits. He also found that Stokes had marketed his residual work capacity.

Employer appealed to the full Commission. The majority of the Commission affirmed the deputy commissioner's award, modifying the terms of the temporary total disability payments to begin on December 23, 2018 and continue until conditions justify a modification thereof. Commissioner Rapaport dissented in the decision to award Stokes benefits, finding that no evidence showed that "claimant's work activities prior to his standing caused or contributed to the injury alleged." Stokes v. Dixie Construction Co. Inc., JCN VA00001547649, at *10-12 (Va. Workers' Comp. Comm'n Sept. 12, 2019).

ANALYSIS

Arising out of Employment

On appeal, employer argues that Stokes failed to prove a compensable injury by accident arising out of his employment because "his task did not require him to work in an unusual and awkward position." It is the burden of employer, the appealing party in this case, to demonstrate

- 4 -

on appeal that the Commission's rulings constituted reversible error. Burke v. Catawba Hosp., 59 Va. App. 828, 838 (2012). "The Commission's factual findings bind [this Court] as long as credible evidence supports them," Riverside Reg'l Jail Auth. v. Dugger, 68 Va. App. 32, 37 (2017) (quoting Van Buren v. Augusta Cty., 66 Va. App. 441, 446 (2016)), such that "the existence of 'contrary evidence . . . in the record is of no consequence,'" City of Waynesboro v. Griffin, 51 Va. App. 308, 312 (2008) (quoting Manassas Ice & Fuel Co. v. Farrar, 13 Va. App. 227, 229 (1991)).

Entitlement to benefits for an injury under the Workers' Compensation Act requires proof, by a preponderance of the evidence, of an "injury by accident arising out of and in the course of the employment." Code § 65.2-101. "In assessing the Commission's determination regarding whether an injury arose 'out of' one's employment, the appellate court faces a mixed question of law and fact." O'Donoghue v. United Cont'l Holdings, Inc., 70 Va. App. 95, 103 (2019). "The Court reviews the legal component of that determination *de novo*." Id. "However, when the Commission makes factual findings based on credible evidence in the record and 'reasonable inferences' drawn from that evidence, those findings are 'conclusive and binding.'" Id. (quoting Virginia Tree Harvesters v. Shelton, 62 Va. App. 524, 532-33 (2013)).

"The 'arising out of' prong of the statutory test is 'to be liberally construed to carry out the humane and beneficent purpose of' the Act." Id. at 103-04 (footnote omitted) (quoting Lucas v. Lucas, 212 Va. 561, 562-63 (1972)). "An accident arises out of the employment if there is a causal connection between the claimant's injury and the conditions under which the employer requires the work to be performed." King v. DTH Contract Services Inc., 69 Va. App. 703, 713 (2019) (quoting City of Richmond v. Braxton, 230 Va. 161, 164 (1985)). "Virginia follows the 'actual risk' doctrine which 'excludes "an injury which comes from a hazard to which the employee would have been equally exposed apart from the employment."'" Id. (quoting Bernard

v. Carlson Companies-TGIF, 60 Va. App. 400, 405 (2012)). "Thus, if an injury 'cannot fairly be traced to the employment as a contributing proximate cause,' the injury is not compensable because it did not 'arise out of the claimant's employment." Id. (quoting Stillwell v. Lewis Tree Serv., Inc., 47 Va. App. 471, 477-78 (2006)). "[A] 'critical link' must exist between the conditions of the workplace and the injury in order for the injury to qualify as 'arising out of' the employment." PYA/Monarch & Reliance Ins. Co. v. Harris, 22 Va. App. 215, 221 (1996) (quoting Pinkerton's, Inc. v. Helmes, 242 Va. 378, 380 (1991)).

Under the circumstances of this particular incident and under the mixed standard of review we must apply, we affirm the Commission's finding that Stokes's employment subjected him to the particular risk that led to his injury. As the Commission found, Stokes's injury occurred "at a discreet time when he stood up from kneeling and digging." Further, the Commission found that Stokes's work duties "required him to work in an unusual and awkward position, kneeling while digging with a shovel."

"The actual determination of causation is a factual finding that will not be disturbed on appeal if there is credible evidence to support the finding." Ingersoll-Rand Co. v. Musick, 7 Va. App. 684, 688 (1989). Credible evidence supported the Commission's causation determination in this case. Throughout the proceedings, Stokes consistently stated that he dug compacted gravel with a shovel while kneeling. During the work task, he repeatedly moved from a kneeling position to a standing position. Stokes also used his knees and feet to move the plywood template forward as he progressed along the area being prepared for the concrete pour. After standing, kneeling, and digging for about thirty to forty-five minutes, Stokes stood from a kneeling position and heard his knee pop. Stokes's supervisor, who had assigned Stokes to grade the gravel, similarly described the injury as occurring when Stokes stood from a kneeling position. Further, Stokes immediately reported the incident to his supervisor and described the

incident in the same way to his doctors. The medical evidence in the case attributed the injury to Stokes standing after being in a kneeling position and corroborated that Stokes had a right knee injury that eventually required arthroscopic surgery. For these reasons, we find that the Commission did not err in determining that Stokes's injury arose out of his employment. See Brooks v. Sears, Roebuck and Co., No. VA000-0011-1954, at *5 (Va. Workers' Comp. Comm'n Jul. 20, 2010) (holding that mechanic's injury arose out of his employment where it occurred when he stood from a kneeling position after replacing a tire), aff'd, No. 1744-10-2 (Va. Ct. App. Feb. 15, 2011); Bassett-Walker Inc. v. Wyatt, 26 Va. App. 87, 93-94 (1997) (*en banc*) (holding that an employee who was required to squat or bend her knees at a knitting machine was engaged in a risk peculiar to the employment).

Marketing Residual Work Capacity

Employer contends that the Commission erred in finding that Stokes was entitled to temporary total disability benefits from December 23, 2018 and continuing because Stokes failed to prove that he adequately marketed his residual work capacity.

"In order to establish entitlement to temporary disability benefits, a partially disabled claimant 'must prove that he made a reasonable effort to market his residual work capacity.'" Dollar Tree Stores, Inc. v. Tefft, 69 Va. App. 15, 27 (2018) (quoting Wall Street Deli, Inc. v. O'Brien, 32 Va. App. 217, 220 (2000)). "The determination of whether a partially disabled employee has adequately marketed his residual work capacity lies within the fact finding judgment of the [C]ommission, and its decision on that question, if supported by credible evidence, will not be disturbed on appeal." Id. (quoting O'Brien, 32 Va. App. at 220-21). "In determining whether a claimant has made a reasonable effort to market his remaining work capacity, we view the evidence in the light most favorable to . . . the prevailing party before the commission." Id. (quoting Nat'l Linen Serv. v. McGuinn, 8 Va. App. 267, 270 (1989)).

In determining a reasonable effort to market residual work capacity, the Commission considers:

> (1) the nature and extent of [the] employee's disability; (2) the employee's training, age, experience, and education; (3) the nature and extent of [the] employee's job search; (4) the employee's intent in conducting his job search; (5) the availability of jobs in the area suitable for the employee, considering his disability; and (6) any other matter affecting [the] employee's capacity to find suitable employment.

Id. at 28 (quoting Nat'l Linen Serv., 8 Va. App. at 272).

The Commission found that Stokes, who was then nineteen years old, was working at his second job after graduating from high school. His work experience involved "heavy construction labor." Stokes testified that he had work experience operating heavy equipment and was looking for work where he would not have to use his injured leg. Stokes made over four contacts per week when looking for work through the internet and personal contacts. The Commission found that Stokes's "marketing evidence showed a good faith effort to find work within his residual capacity." The Commission's findings are supported by credible evidence in the record, including Stokes's testimony and list of job contacts made from December 23, 2018 through May 6, 2019. See id. Thus, the evidence in the record supports the finding that Stokes's marketing was reasonable, in light of his education and experience, as well as the nature of his work restrictions. Accordingly, the Commission did not err in making this determination.

For these reasons, we affirm the decision of the Commission.

Affirmed.